Nicholas W. JONES

v.

Robert GRANGER.

Civil No. K–91–1166.

United States District Court,
D. Maryland.

Aug. 5, 1996.

John M. Seeberger, Smith, Somerville & Case, L.L.C., Baltimore, Maryland, for plaintiff.

Aron U. Raskas, Kramon & Graham, P.A., Baltimore, Maryland, for defendant.

FRANK A. KAUFMAN, Senior District Judge.

Plaintiff, an inmate in the Maryland prison system, alleges that defendant, a doctor, violated 42 U.S.C. § 1983 by refusing to remove a suture wire from plaintiff's abdomen after a hernia surgery. Defendant Granger has moved for summary judgment, arguing that plaintiff has only demonstrated that plaintiff and other doctors disagreed with Granger's decision, not that Granger exhibited the deliberate indifference required to render him liable under § 1983. Having considered defendant Granger's motion and all filings related thereto, this Court concludes that genuine disputes involving relevant facts exist in this case. For that reason, this Court will deny defendant's summary judgment motion.

## I. PROCEDURAL HISTORY

Plaintiff originally filed this action on April 26, 1991, against several health care providers, contending that the defendants unlawfully denied him treatment for a variety of medical complaints. By Order dated July 17, 1992 (Paper No. 82), this Court dismissed the within case without prejudice against two defendants whom plaintiff had not yet served. By Order dated July 20, 1992 (Paper No. 84), this Court granted summary judgment in favor of defendants regarding all allegations except the allegation that plaintiff had not received adequate medical treatment for the suture wire which remained in his abdomen following hernia surgery. Because plaintiff named only defendants Robert Granger, M.D., Roy Whitehouse, and James Wright in connection with that allegation, only those defendants remained in the case

after July, 1992. Thereafter, all three of those defendants moved for summary judgment. On March 6, 1996, during an on-the-record motion hearing in open court, this Court granted summary judgment to defendant Wright without objection from plaintiff. By Memorandum Order dated March 11, 1996, this Court granted summary judgment in favor of defendant Whitehouse. Accordingly, at this time, the only defendant in this case is defendant Granger and the sole remaining allegation concerns the suture wire in plaintiff's abdomen.

## II. FACTS

On September 16, 1987, at the University of Maryland Hospital, plaintiff underwent hernia surgery. After the surgery, a suture wire remained in plaintiff's abdomen. On April 4, 1989, Dr. Turkman, apparently a prison official, referred plaintiff for surgery to remove the wire. On June 22, 1989, Dr. Aybar, also seemingly a prison official, recommended that plaintiff have the suture removed surgically. Dr. Imoke, evidently a private physician, concurred in that recommendation on November 1, 1989.

On December 21, 1989, plaintiff had a clinic appointment with defendant Granger, who, from August 1, 1989 through November 30, 1990, was the Medical Director for the Baltimore Region of Correctional Medical Systems (CMS), the organization which held the state-wide contract to provide medical services to inmates. Granger periodically conducted clinics at the various prison facilities to determine whether the treatment which had been prescribed for inmates was appropriate. Granger asserts that he examined plaintiff and concluded that, in his medical judgment, it was not necessary to remove the suture.[1] Plaintiff, to the contrary, contends that Granger failed to examine him, but nevertheless concluded that the suture did not need to be removed. Dr. Aybar agrees that,

for two reasons, an examination probably did not take place. First, according to Dr. Aybar, it is standard medical practice for a doctor to make notes of an examination. Granger's failure to mention any examination in his notes of the December, 1989 appointment thus provides some indication that Granger did not examine plaintiff. Second, Granger noted in December, 1989 that plaintiff had a left inguinal hernia, which would have been in the groin, but plaintiff actually had a spigelian hernia on the left side, which is in the lumbar area in the abdomen. Such a mistake is another indication to Dr. Aybar that defendant did not examine plaintiff at the time in question.

During the period from May 22, 1990 through November 20, 1990, plaintiff submitted thirteen additional requests for medical care to prison officials complaining of pain in his abdomen or side, apparently due to the suture wire.[2] Although defendant signed those requests, the record does not indicate that any action was taken regarding them. Subsequently, two additional doctors, Dr. Edminston and Dr. Buchanan of the University of Maryland Hospital, recommended surgery on April 23, 1991 and November 25, 1991, respectively. Finally, a sixth doctor, Dr. Middlesworth of the Washington County Hospital, removed the wire on November 7, 1994.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. "A defendant moving for summary judgment has the burden of showing the absence of any

---

1. In support of that judgment, defendant states that plaintiff failed to attend two surgical clinics on September 25, 1989 and November 7, 1989, indicating to defendant that the suture was not a serious problem for plaintiff. Defendant's September 16, 1994 motion for summary judgment, Ex. D, Aff. of Granger at ¶¶ 5, 6. Plaintiff does not directly respond to that argument. However, as will be discussed *infra* at 6–7, there is suffi-

cient evidence elsewhere in this record to indicate that, for summary judgment purposes, plaintiff's condition was not lacking in seriousness.

2. Defendant's September 16, 1994 motion for summary judgment, Ex. B. at 112–116, 120, 122–123, 125, 130–131, 133, 136.

genuine issue of material fact and that he is entitled to judgment as a matter of law.... Once a defendant makes the necessary showing, the plaintiff must go forward and produce evidentiary facts to support his contention." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). *See also* Fed. R.Civ.P. 56(e). However, the non-movant is entitled to have all reasonable inferences drawn in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

## IV. PENDING MOTION

 Courts apply a two prong standard in cases such as the case herein: an objective prong regarding whether plaintiff's medical need was serious, plus a subjective prong regarding whether defendant exhibited deliberate indifference toward that need. As the Fourth Circuit has explained:

> Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the eighth amendment.... To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.

*Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990) (Phillips, J.) (citation omitted).

 For purposes of this summary judgment motion, it appears that plaintiff's need to have the suture removed was objectively serious. "A 'serious medical need' is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious even a layperson would easily recog-

nize the necessity for a doctor's attention.' " *Sheldon v. C/O Pezley*, 49 F.3d 1312, 1316 (8th Cir.1995) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir.1991)); *see also Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir.1995). In other words, "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir.1992).

In this case, the medical defendants do not dispute that six doctors have recommended treatment for plaintiff's condition. In fact, according to the present record in this case, ₊defendant is the only doctor who determined that the suture did not need to be removed.[3] Furthermore, according to plaintiff, the suture wire restricted his mobility and recreation, caused him recurring pain, and prevented him from earning good time credits and money by working in the prison hospital and/or kitchen.[4] While the medical defendants do not appear to agree that the suture wire significantly interfered with plaintiff's daily activities, plaintiff himself has supported that position with the type of evidence required by Rule 56. From this evidence, a jury could conclude that plaintiff's condition was serious. For that reason, plaintiff survives summary judgment on that issue.

 The more difficult question in this case is whether defendant was deliberately indifferent to plaintiff's medical need. "[D]eliberate indifference entails something more than mere negligence, ... [but] is satisfied

---

**3.** The doctor who apparently removed the suture wire on November 4, 1994, Dr. Middlesworth initially wrote on the consultation form "[n]o intervention at this time." Plaintiff's Dec. 21, 1994 filing at Exhibit A; Medical defendants' January 3, 1995 filing at 2 n. 2. However, that doctor then lined those words out and apparently proceeded to perform the surgery. Furthermore, Dr. Middlesworth later stated, "[R]emoving the suture was the right thing to do." Plaintiff's June 7, 1996 filing, Ex. C., Aff. of Middlesworth.

**4.** Defendant's Sept. 16, 1994 motion for summary judgment, Exhibit E at 4 (Answer No. 8).

Two doctors corroborate those allegations. Dr. Imoke, who examined plaintiff in April, 1988 and recommended at that time that the suture be removed, indicated that "failure to remove the suture wire would have caused [plaintiff] a moderate amount of pain and it could have reduced his activity level." Plaintiff's June 7, 1996 filing *in opposition to summary judgment motion*, Exhibit B, Aff. of Dr. Imoke. Dr. Middlesworth, who removed the suture on November 7, 1994, stated: "I believe that the suture was a continued source of pain to Plaintiff." *Id.*, Exhibit C, Aff. of Dr. Middlesworth.

by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).[5] Justice Souter, writing for the Supreme Court in *Farmer*, also stated: "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions for confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at ——, 114 S.Ct. at 1979.[6] Justice Souter continued: "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways including inference from circumstantial evidence, . . ., and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 1981. Furthermore, a prison official who "merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist" would not escape liability. *Id.* at —— n. 8, 114 S.Ct. at 1981 n. 8.

The Fourth Circuit applied those standards in *Brice, supra*. During a bench trial, Brice testified that, after a fight with another inmate, he asked to be taken to the prison medical department because of injuries to his mouth. The prison guard who broke up the fight, Deputy Nieves, allegedly ignored plaintiff's request and left plaintiff in his cell. Brice contended that subsequent efforts by him and other inmates were unsuccessful in attracting the attention of the prison guards, who allegedly did not conduct security checks as often as required. Finally, after approximately four hours, Brice assertedly called his cousin who brought the matter to the guards' attention. Brice was taken to the medical department where the two nurses on duty

determined that he might be in shock due to a broken jaw and had him transported to a local hospital for treatment. The Fourth Circuit concluded that those facts, if true, might establish deliberate indifference through "willfully or intentionally contrived obliviousness to a medical need shown to be so obvious that it *must* be known unless willfully blocked out." *Id.* at 106. Concluding that the magistrate judge's factual review was not detailed enough to permit appellate review, the court remanded the case for reconsideration by the district court.

In *Warren v. Fanning*, 950 F.2d 1370 (8th Cir.1991), *cert. denied*, 506 U.S. 836, 113 S.Ct. 111, 121 L.Ed.2d 68 (1992), plaintiff alleged that defendant, a prison doctor, violated plaintiff's constitutional rights by demonstrating deliberate indifference to plaintiff's serious medical needs. Defendant Taca appealed the district court's denial of his motion for judgment notwithstanding the verdict. The record before the Eighth Circuit, in the light most favorable to plaintiff, indicated that plaintiff complained to prison medical staff of pain and discomfort in his left toes at least twelve times, that his toenails were black for six months, and that no action regarding his condition was taken. In fact, defendant allegedly told plaintiff that his toenails were supposed to turn black and fall off once a year. When plaintiff was seen by an outside specialist, that doctor's diagnosis and prescribed treatment were "vastly different" from that of defendant. *Id.* at 1373. On those facts, the Eighth Circuit affirmed the denial of defendant's motion, concluding that "reasonable persons could differ as to whether Dr. Taca's actions amounted to deliberate indifference to Warren's medical needs, or whether there was simply a disagreement with the course of Warren's medical treatment." *Id.*

Here, plaintiff alleges that defendant did not examine him. Dr. Aybar corroborates,

---

5. *See also Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir.1990) (while expert testimony may be required, in a given case, to aid the jury in determining the threshold standard of medical care, expert testimony that physicians' behavior was grossly negligent would not appear always to be required).

6. *See also Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir.1995) (Phillips, J.) (deliberate indifference involves "recklessness of the subjective type used in criminal law").

at least to some extent, that allegation. When this evidence is apparently combined with plaintiff's thirteen unanswered requests for medical attention regarding the suture between May 22, 1990 and November 20, 1990 (during which time defendant was the Medical Director for the Baltimore Region of CMS), this Court concludes that there is sufficient evidence of defendant's deliberate indifference to survive summary judgment.

For the reasons stated, *supra*, this Court hereby denies defendant's summary judgment motion. This Court will provide further instructions regarding pre-trial procedures in a separate Memorandum and Order of even date herewith.