DIANA GRIBBON MOTZ, Circuit Judge,
concurring:
I concur in Judge Wynn’s opinion for the court. On remand, Adib Eddie Ramez Makdessi may not prevail, but the judgment of the district court rejecting his claim in its entirety cannot stand. I write separately to explain why I believe governing legal principles require this relief.
The Supreme Court has painstakingly explained that an inmate can establish a *137 violation of the Eighth Amendment by offering evidence that a prison official “knew of a substantial risk” that the inmate would suffer “serious harm” or that the official “must have known” about this risk. Farmer v. Brennan, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (emphasis added). And a court may conclude that the official must have known of that substantial risk based on “the very fact that the risk was obvious.” Id. Here, Makdessi undoubtedly suffered serious harm when he was assaulted by his cellmate.[1] The remaining question is whether Defendants Fields, King, and Gallihar (“the Defendants”) must have known of the substantial risk that Makdessi would be assaulted by a fellow prisoner.
The district court expressly recognized the “contrasts between Makdessi himself (5 feet 4 inches tall, age 49, physically hindered by back problems and asthma, depressed, security level 3, no gang affiliation, two minor prison infractions)” and the prisoner who beat Makdessi, Michael Smith “(a ‘Gangster Disciple,’ disciplinary record of almost 30 charges, including masturbating and making sexual advances toward a non-offender, numerous aggravated assaults, and fighting with another inmate).” J.A. 1007.[2] Notwithstanding these significant differences in age, size, health, disciplinary record, and gang affiliation, however, the district court rejected Makdessi’s contention that in permitting Makdessi to reside in the same cell as Smith, the Defendants ignored an obvious risk of serious harm to Makdessi.
The district court offered a very limited rationale for so holding. The court simply stated that because the Defendants testified that they did not “assign[ ] cellmates,” it could not “find that the physical and disciplinary differences” between Makdessi and Smith undermined the magistrate judge’s determination that the Defendants lacked “prior knowledge that Smith would likely victimize Makdessi.” J.A. 1007-08 (emphasis added).[3] For the following reasons, I cannot conclude that this rationale provides an adequate basis for rejection of Makdessi’s obvious risk claim.
First, the district court’s explanation evidences a belief that Makdessi had to prove that the Defendants had actual “pri- or knowledge” of the risk that he would be assaulted. ' The law, of course, is quite different. The Supreme Court has clearly held that “a factfinder may conclude that a. prison official knew of a substantial risk from the very fact that the risk was obvious,” as where the official “had been exposed to information concerning the risk and thus must have known about it.” Farmer, 511 U.S. at 842, 114 S.Ct. 1970 (internal quotation marks and citation omitted).
Second, the district court also seemed to believe that Makdessi had to prove that the Defendants knew of a substantial risk that Smith, in particular, rather than any other inmate, might assault Makdessi.[4] *138 But Fanner also forecloses a specific risk requirement of this sort. See id. at 843, 114 S.Ct. 1970 (“Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.”).
Third, the district court apparently reasoned that the Defendants’ testimony that they had no role in cell assignment 'absolved them from liability even if they knew (or should have known) that Makdes-si was housed with Smith and that this subjected Makdessi to an obvious risk of serious harm. But the Defendants testified only that they played no role in assigning cellmates. They offered no testimony or other evidence that they did not know that Makdessi and Smith were cellmates. And evidence in the record suggests that the Defendants did indeed know of this.[5] As we explained in reversing the judgment after trial for a prison guard in another Eighth Amendment case, “even a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is shown, for example, that he ... ‘declined to confirm inferences of risk that he strongly suspected to exist.’ ” Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir.1995) (quoting Fanner, 511 U.S. at 843 n. 8, 114 S.Ct. 1970).
Finally, the district court appears not to have considered the obvious risk in housing Makdessi with Smith in the context of Makdessi’s many grievances documenting prior physical and sexual assault at the prison. The magistrate judge found (and the district court agreed) that “the evidence admitted at trial undoubtedly shows that Makdessi filed numerous grievances and complaints to various departments, and he wrote letters ... alleging that he had been sexually assaulted on multiple occasions while incarcerated at Wallens Ridge.” J.A. 974.[6] The district court properly recognized that knowledge of serious risk of harm could be inferred by demonstrating a “longstanding, pervasive, [and] well-documented” risk, Farmer, 511 U.S. at 842, 114 S.Ct. 1970 (internal quotation marks and citation omitted). But the court discounted Makdessi’s evidence of exactly such “well-documented” risk for two, equally unpersuasive, reasons.
Initially, the court relied on the Defendants’ testimony that “[s]ecurity matters or sexual assault allegations might be directly assigned to ... a higher-ranking officer” and so the Defendants “would not necessarily see [them].” J.A. 1005 (emphasis added). The Defendants, however, offered no evidence that this is in fact what happened in Makdessi’s case. Testimony that serious allegations of assault “might be” assigned to other officers does not establish that the Defendants had no knowledge of the risk of substantial harm *139 to Makdessi. This is particularly so given the number of Makdessi’s complaints of abuse, the written policy requiring notification of all such abuse, see J.A. 494-501, and the fact that the face of some of the complaints expressly state that they were forwarded directly to one or more of the Defendants. See, e.g., J.A. 246; J.A. 517.
The other reason that the district court offered for discounting Makdessi’s multiple written grievances was that they were “general” and “often sought mental health treatment or a single cell assignment, rather than expressly requesting protection.” J.A. 1006. But examination of the grievances themselves belies this conclusion. See, e.g., J.A. 256, 259-60, 263, 266, 274, 276, 277. Many are specific; few are limited to expressions of mental illness or single-cell assignment; crucially, nearly all express ongoing fear of physical harm or retaliation. Moreover, those instances in which Makdessi did simply plead to be assigned to a single cell to avoid further sexual assault would seem, contrary to the district court’s conclusion, to qualify as “expressly requesting protection.”
On remand, the district court will have an opportunity to apply these governing principles. The court will be able to determine, in light of Makdessi’s undisputed vulnerability and his multiple written complaints of abuse at the hands of other prisoners, if the risk of serious harm to Makdessi in housing him with an aggressive gang member who had committed numerous assaults while imprisoned was so obvious that the Defendants must have known of the risk, appreciated its seriousness, and yet failed “to take reasonable measures to abate it.” Farmer, 511 U.S. at 847,114 S.Ct. 1970.[7]
“The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones,” no matter how abhorrent a prisoner’s crimes. Id. at 832, 114 S.Ct. 1970 (internal quotation marks and citation omitted). A prisoner faces a daunting task in establishing an Eighth Amendment violation. But -when an inmate has “take[n] advantage of internal prison procedures for resolving inmate grievances” and these actions “do not bring constitutionally required changes, the inmate’s task in court will obviously be much easier.” Id. at 847, 114 S.Ct. 1970. Most importantly, the Supreme Court has been clear that the Eighth Amendment does not allow prison officials “to take refuge in the zone between ignorance of obvious risks and actual knowledge of risks.” Id. at 842, 114 S.Ct. 1970 (internal quotation marks and citation omitted). Thus, prison officials may not escape liability simply by offering a blanket denial of any knowledge of an obvious risk. They “are not free to let the state of nature take its course” within their prisons but rather “have a duty to protect prisoners from violence at the hands of other prisoners.” Id. at 833, 114 S.Ct. 1970 (internal quotation marks and citation omitted).
For these reasons, I join in the order vacating the judgment of the district court and remanding the case for further proceedings.

. The Defendants offer’ no argument that Makdessi failed to demonstrate that he suffered “serious harm,” and, given the prison’s own medical records, such an argument would be frivolous.

. Citations to the J.A. refer to the parties’ Joint Appendix filed in this case.

. The magistrate judge herself offered no rationale for recommending rejection of Mak-dessi’s obvious risk claim. Indeed, the magistrate judge failed to address Makdessi’s obvious risk claim at all.

. Further indicating that the district court held this erroneous view is the significance it attached to the fact that in Makdessi’s "dozens” of written "complaints and grievances” only once prior to December 21 did he state that he had "previously been assaulted by his current roommate,” Smith. See J.A. 1003.

. Fields testified that he remembered when Makdessi and Smith were celled together. J.A. 778/ Moreover, as the district court noted, Gallihar testified that he, Fields, and King, were “the officers responsible for the safety of inmates in Makdessi’s pod,” J.A. 1005; this suggests that all three Defendants knew that Makdessi and Smith were celled together— and would have been aware of the dangerous mismatch.

. The magistrate judge also found Makdessi’s credibility undermined by the attendance records that contradicted his testimony that he spoke with defendant Boyd on a particular date. J.A. 971. Of course, we defer to credibility determinations of a trial court. But this finding does not undermine Makdessi’s credibility as to his "numerous grievances and complaints” to prison officials, which the magistrate judge expressly found believable. J.A. 974.

. Of course, "it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety.” Farmer, 511 U.S. at 844, 114 S.Ct. 1970. But when the risk is obvious, the burden shifts to the prison official to rebut the inference that he must have known about it. Id. Naked assertions of ignorance that defy prison procedure and logic cannot satisfy this burden.