Eric A. BRICE, Plaintiff–Appellant,

v.

VIRGINIA BEACH CORRECTIONAL CENTER; Frank Drew, Sheriff; John Nieves, Deputy Sheriff, Defendants–Appellees,

and

City of Virginia Beach, Defendant.

No. 93–6549.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1995.

Decided June 28, 1995.

**ARGUED:** Jeffrey R. Palk, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, DC, for appellant. Mark Douglas Stiles, Willcox & Savage, P.C., Norfolk, VA, for appellee. **ON BRIEF:** Steven H. Goldblatt, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, DC, for appellant. Conrad M. Shumadine, Willcox & Savage, P.C., Norfolk, VA, for appellee.

Before RUSSELL and LUTTIG, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Vacated and remanded by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Judge RUSSELL and Judge LUTTIG joined.

## OPINION

PHILLIPS, Senior Circuit Judge:

Virginia Beach Correctional Center (VBCC) inmate Eric Brice brought this pro se civil rights action under 42 U.S.C. § 1983 against the City of Virginia Beach, the VBCC, the sheriff of Virginia Beach, and a prison guard, alleging that they violated his rights under the Eighth and Fourteenth Amendments by failing to protect him from the attack of another inmate and by failing to provide adequate medical care for injuries he sustained during the attack. The district court entered judgments in favor of all the defendants. On this appeal, Brice challenges only the district court's ruling that one of the defendants, Deputy Sheriff John Nieves, was not deliberately indifferent to Brice's serious medical needs. Because the district court's findings of subsidiary fact are too imprecise and equivocal to support its ultimate determination that Deputy Nieves did not act with deliberate indifference and because that determination may have been based upon an erroneous view of the controlling legal standard, we vacate that ruling and remand for reconsideration of the claim against Nieves.

### I

The undisputed facts are as follows. On August 7, 1991, Brice was incarcerated in cell block 2N of the VBCC. Deputies Nieves and Correia were responsible for the security of the second floor, including cell block 2N, between 3:00 p.m. and 11:00 p.m. on that date. They were leading the inmates of cell blocks 2N and 2P to or from dinner at about 4:50 p.m. when a medical emergency on another floor was announced over the intercom, requiring that the inmates be returned immediately to their cells. Deputy Correia went to help with the emergency while Deputy Nieves followed the inmates back to their cells. Ahead of Nieves and around a turn in the hall, a fight broke out between Brice and an inmate from cell block 2P. Nieves broke

up the fight and put the inmates back in their cells.

Brice remained in his cell from the time of the fight until 9:00. The parties dispute the nature of any contact between Brice and the guards for the next several hours (the conflicting testimony is discussed below). VBCC official policy requires the guards to conduct two random security checks per hour. The guard's log for August 7, 1991, indicates that all the required checks for the area under the control of Deputies Nieves and Correia, including cell block 2N, were conducted that evening. However, it was not until 9:00 that an officer took Brice to the VBCC medical department, where the nurses on duty decided that his condition required medical diagnosis and treatment beyond their abilities. Deputy Nieves was dispatched to accompany Brice to a local hospital, where Brice was treated for a broken jaw.

Brice brought this action under 42 U.S.C. § 1983, alleging that the defendants violated his rights under the Eighth and Fourteenth Amendments by failing to protect him from the attack of the other inmate and by failing to provide adequate and timely medical care for his broken jaw after the attack. The district court dismissed the claims against the VBCC and then referred the case to a magistrate judge for evidentiary hearings on the outstanding claims. The magistrate judge conducted a bench trial with the consent of the parties. At the close of Brice's case, the magistrate judge granted motions for judgment as a matter of law in favor of the sheriff and the city but denied Nieves's motion to dismiss, leaving Nieves as the sole remaining defendant. The magistrate judge then heard Nieves's defense and subsequently entered judgment in Nieves's favor.

Before rendering judgment, the magistrate judge summarized and commented on the conflicting evidence, which consisted of the following. Deputy Nieves testified that, when he was returning the inmates to their cells at approximately 5:00 on August 7, 1991, he rounded a corner in the hall in time to see one "swing" before he broke up the fight by pulling the inmate from cell block 2P off Brice and returning both inmates to their cells. He testified that neither inmate appeared to be injured and that, in answer to his query, both declined medical attention. He noted the incident in the log book and notified his watch commander, Lieutenant Hills, of the fight, telling Lt. Hills that neither inmate needed medical attention.

Deputy Nieves also testified that he conducted one security check after the fight and that, during it, he noticed that Brice was sitting in the back corner of his cell, but that Brice waved him off when he asked Brice "if he needed something, or if he was all right." J.A. 186–87. Deputy Correia testified that he did not clearly recall the evening in question, but that he did recall making most of the security checks that were logged in that evening. He claimed that he did not hear anything about any injury during the checks and that the "floor was basically quiet." J.A. 349. Lt. Hills testified that he remembered walking by cell block 2N between 7:30 and 7:40 p.m. and that no one called out or tried to tell him that Brice needed medical attention.

In contrast, Brice testified that, following the fight, he was bleeding from the mouth and that he asked to be taken to the VBCC medical department but that Nieves ignored his request. He also testified that the required security checks did not take place that evening and that he did not see Deputy Nieves or any other VBCC officer for several hours after the fight. In addition, four fellow inmates testified that security checks were generally not conducted as often as required during the summer of 1991. Brice also testified that, after he was returned to his cell, he was in extreme pain and his mouth continued to swell and bleed, and that he and other inmates tried in vain to get the attention of the guards by yelling and waving towels through the bars of their cells, in front of a security camera in the cell block.[1]

Brice testified that, at approximately 8:55, still having not received any medical attention, he telephoned his cousin outside the jail

---

1. At trial, Brice did not call any inmate who had been in cell block 2N to confirm these efforts, although he did call other inmates to testify on other matters.

and asked her to call the jail to request that he be given medical assistance. She kept him on the line and initiated a three-way call to the jail. Brice contends that they spoke to Lt. Hills, although Hills testified that he did not speak to them on the phone. Regardless, an officer appeared and took Brice to the jail's medical department soon thereafter, at approximately 9:00 p.m.

Two nurses were on duty on the evening of August 7, 1991; both participated in treating and evaluating Brice. Nurse Barnes testified that she noted a large amount of swelling around Brice's jaw and that he was spitting bloody saliva. She testified that she thought he might be suffering from a broken jaw and possibly going into shock, but was unable to diagnose him herself in the jail facility. Nurse Haberle testified that Brice told her that he had sustained his injury at approximately 5:00 p.m., but had not reported it until 9:00 p.m. and only shrugged when she asked him why. She recorded this information in the "Off–Site Service Request" form that she filled out after determining that Brice would need to receive further diagnosis and treatment elsewhere. Deputy Nieves testified that, while serving as Brice's escort to a local hospital, he asked Brice why he had not reported the injury sooner, to which Brice replied that he "was pissed off." J.A. 187.

After considering the foregoing evidence, the magistrate judge found that Brice had sustained a serious injury at 5:00 but that Deputy Nieves was not subjectively aware of that fact until 9:00 when he was called to escort Brice to the hospital. He ruled from the bench:

> I have to be bound by the evidence, and I must conclude, Mr. Brice, that you have not established by a preponderance of the evidence that when Mr. Nieves left you at ten minutes of five, he was at that time aware, in a constitutionally required sense, that you were in serious need of medical attention, or that your medical condition was as serious as it was.
>
> Perhaps I conclude that he was negligent, that he should have been more solicitous; that is, if he should have, from seeing that you had been knocked on the floor, made further investigation. But that's carelessness, if it existed. But I cannot find that you have established, by the preponderance of the evidence, that Deputy Nieves knew at that time that you were in need of medical attention and that he was thereafter deliberately inattentive and deliberately indifferent to that need, because there is nothing that ties him in to those activities from then until nine, except to go up to medical when you were carried there.

J.A. 399–400. On this appeal, Brice challenges the magistrate judge's conclusion that Nieves was not deliberately indifferent to his serious medical needs. Brice also challenges the magistrate judge's specific finding that no evidence tied Nieves to Brice's efforts to obtain medical attention before 9:00 p.m.

## II

An "unnecessary and wanton infliction of pain" implicates the Eighth Amendment's guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). A prison guard unnecessarily and wantonly inflicts pain by acting with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). To establish such a constitutional violation, a claimant must prove that, objectively assessed, he had a "sufficiently serious" medical need to require medical treatment, and that a prison guard, subjectively aware of the need and of its seriousness, nevertheless acted with "deliberate indifference" to it by declining to secure available medical attention. *Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); *Wilson v. Seiter*, 501 U.S. 294, 297–98, 111 S.Ct. 2321, 2323–24, 115 L.Ed.2d 271 (1991).

The parties do not dispute that Brice's injury (the trauma and pain he suffered due to the four hour delay before treatment of his jaw) was sufficiently serious to meet the objective inquiry. They do dispute, however, whether Deputy Nieves had a sufficiently culpable state of mind to be found to have

acted with deliberate indifference to Brice's needs.

The Supreme Court recently has clarified the meaning of "deliberate indifference" and its subjective nature in this context in *Farmer v. Brennan*, —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811. Justice Souter, writing for the majority, explained that it entails "more than ordinary lack of due care for the prisoner's interests or safety," or "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Id.* at ——, 114 S.Ct. at 1978. The Court held that deliberate indifference in this context lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law.[2] *Id.* The Court summarized:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at ——, 114 S.Ct. at 1979.

■ The cornerstone of this definition is that the Eighth Amendment forbids the infliction of cruel and unusual *punishments,* not of cruel and unusual *conditions. Id.; Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir.1993). Actual knowledge or awareness on the part of the alleged inflicter thus becomes essential to proof of deliberate indifference "because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." *Farmer,* —— U.S. at ——, 114 S.Ct. at 1982. It therefore "remains open to officials to prove that they were unaware of even an obvious risk to inmate health or safety." *Id.*

■ Nevertheless, even under this subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious. As the Court explained,

> Whether a prison official had the requisite knowledge of a substantial risk [is] a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk *from the very fact that a risk was obvious.*

*Id.* at ——, 114 S.Ct. at 1981 (citation omitted) (emphasis added). In other words, although the obviousness of a particular injury is not conclusive of an official's awareness of the injury, *see id.* (quoting 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.7, p. 335 (1986)); *id* at ——, 114 S.Ct. at 1982 ("That a trier of fact may infer knowledge from the obvious ... does not mean that it must do so."); *see also id.* at —— n.8, 114 S.Ct. at 1982 n. 8 ("While the obviousness of a risk is not conclusive ..."), an injury might be so obvious that the factfinder could conclude that the guard *did* know of it because he could not have failed to know of it. Moreover, under this standard for assessing whether deliberate indifference existed, even a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is shown, for example, that he merely refused to verify "underlying facts that he strongly suspected to be true," which, if verified, would have compelled him to realize that the claimant needed immediate medical attention, or that he "declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at —— n.8, 114 S.Ct. at 1982 n. 8.

■ We review a district court's findings regarding whether a guard has acted with deliberate indifference under a clearly erroneous standard. Fed.R.Civ.P. 52(a); *Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir.1988). We may not substitute our judgment on factual issues for that of the magistrate judge unless, after a complete review of the record, we are "left with the definite and firm conviction that a mistake has been committed." *Miller v. Mercy Hosp., Inc.,* 720 F.2d 356, 361 (4th Cir.1983) (quoting *United States v.*

---

**2.** In contrast to "civil-law" recklessness, under which a person is judged reckless if he acts in disregard of an unjustifiably great risk of harm of which he knew or should have known. *Id.*

*United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)), *cert. denied,* 470 U.S. 1083, 105 S.Ct. 1841, 85 L.Ed.2d 141 (1985). "[T]he conviction of mistake may properly be based upon a conclusion that, without regard to what the 'actual' facts may be, the findings under review were induced by an erroneous view of the controlling legal standard or are not supported by substantial evidence." *Id.* at 361 (citations omitted).

■ Here, the magistrate judge held that Deputy Nieves was not deliberately indifferent to Brice's serious medical needs. We find ourselves unable to review that decision or its subsidiary factual findings with sufficient confidence to undertake the effort. From his opinion, we cannot be sure that the magistrate judge fully appreciated the subtleties of the concept of subjective awareness as including willfully or intentionally contrived obliviousness to a medical need shown to be so obvious that it *must* be known unless willfully blocked out.

As critically, the magistrate judge's findings of fact, self-styled as "observations" and "musings" regarding which portions of the evidence "caused [him] a great deal of concern" and which he found "awfully difficult to understand," J.A. 393–95, are too vague and equivocal to permit confident review. The magistrate judge never indicated which version of the events at issue he found credible. For instance, he stated that "[i]t does seem odd that Mr. Brice would sit there for all that time making no complaints," J.A. 398, but never made a finding to the contrary. Consequently, we are unable to discern whether the magistrate judge credited Brice's testimony that he explicitly asked Nieves for medical attention immediately after the fight and then continued, with the aid of other inmates, to try to alert the guards to his medical needs for the next four hours.[3] Additionally, we cannot ascertain whether the magistrate judge found that Nieves both consciously ignored the original request and the subsequent signals via the security camera and also never returned to the cell block to check on Brice.

Because of their ambiguous nature, we are unable to determine whether the factual findings (if such they rightly be termed) are supported by substantial evidence. This in turn entails that we cannot properly review the magistrate judge's ultimate finding that Nieves was not deliberately indifferent to Brice's serious medical needs or discern whether that determination encompassed the finding that Nieves was not intentionally oblivious to Brice's condition.

Accordingly, we must vacate that portion of the judgment which relieves Deputy Nieves of liability and remand for reconsideration of the claim against Nieves in light of this opinion. *See Bazemore v. Friday,* 848 F.2d 476, 480 (4th Cir.1988) (remand for "a far more reasoned weighing of the evidence"); *Sine v. Local No. 992 Int'l Bhd. of Teamsters,* 644 F.2d 997, 1004 (4th Cir.1981) (remand necessary where district court's factual review was not sufficiently detailed to support its ultimate findings). Reconsideration may be done on the extant or a reopened record in the district court's informed discretion.

*SO ORDERED.*

---

**3.** In any event, decisive weight must not be placed on a finding that Brice did not notify Nieves directly of his injury. Rather, such a finding must be considered in light of any other evidence that Nieves knew of the injury. *See Farmer,* —— U.S. at ——, 114 S.Ct. at 1984.