**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-7606

ADIB EDDIE RAMEZ MAKDESSI,

Plaintiff – Appellant,

v.

LT. FIELDS; SGT. KING; CAPT. GALLIHAR; DAVID BELLAMY; GLEN
BOYD; JANE DOE; THOMAS HALL,

Defendants – Appellees,

and

HAROLD W. CLARKE, Director of Virginia Corrections; TIMOTHY
SUMPTER; BRANDON WOODWARD; CLARENCE SHUPE; DENNIS SLUSS,

Defendants.

Appeal from the United States District Court for the Western
District of Virginia, at Roanoke.  Glen E. Conrad, Chief
District Judge.  (7:11-cv-00262-GEC-PMS)

Argued:  October 28, 2014          Decided:  March 12, 2015

Before MOTZ, SHEDD, and WYNN, Circuit Judges.

Vacated and remanded by published opinion.  Judge Wynn wrote the
majority opinion, in which Judge Motz joined.  Judge Motz wrote
a separate concurring opinion.  Judge Shedd wrote a separate
opinion concurring in part and dissenting in part.

**ARGUED:** Stephen William Kiehl, COVINGTON & BURLING LLP, Washington, D.C., for Appellant. Trevor Stephen Cox, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Daniel Suleiman, COVINGTON & BURLING LLP, Washington, D.C., for Appellant. Mark R. Herring, Attorney General of Virginia, Cynthia E. Hudson, Chief Deputy Attorney General, Stuart A. Raphael, Solicitor General of Virginia, Linda L. Bryant, Deputy Attorney General, Richard C. Vorhis, Senior Assistant Attorney General, Kate E. Dwyre, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

_____

WYNN, Circuit Judge:

Plaintiff Adib Eddie Ramez Makdessi lodged numerous complaints about repeated physical and sexual abuse he suffered while imprisoned in Virginia Department of Corrections facilities. The court below found it "clear" that prison officials "should have been more diligent in handling Makdessi's claims of sexual assault." J.A. 975. Nevertheless, the magistrate judge recommended, and the district court adopted, the view that because the prison officials named as defendants in Makdessi's suit did not actually know of the substantial risk of harm Makdessi faced, his claims must fail.

The Supreme Court has stated, however, that the subjective "actual knowledge" standard required to find prison officials deliberately indifferent to a substantial risk of serious injury may be proven by circumstantial evidence. Prison officials may not simply bury their heads in the sand and thereby skirt liability. Rather, they may be held accountable when a risk is so obvious that it had to have been known. Because we do not believe that the court below appreciated this nuance, we vacate the dismissal of Makdessi's claims against Defendants Fields, King, and Gallihar.

Makdessi does not dispute the facts found as a result of the bench trial below. Makdessi is a five-foot-four-inch, forty-nine-year-old man with physical and mental ailments that make him "vulnerable to harassment and attacks" in prison. J.A. 956. Thus, Makdessi has been forced to pay for protection from such abuse.

Makdessi testified that Defendant Christopher King, a prison official at Wallens Ridge State Prison, where Makdessi was incarcerated, repeatedly called him names including "sand nigger" and "bitch." Id. Makdessi testified that as far back as 2007, he complained to the Assistant Warden about mistreatment by his cellmate, that King accused him of being a "snitch," and that no one ever investigated and nothing was done.

In 2010, Makdessi sent another complaint to the Assistant Warden, stating that King hated him, refused to listen to him, and retaliated against him when he complained. Makdessi testified that this complaint, too, garnered no response.

In August 2010, Makdessi was moved to a cell with a new cellmate, Michael Smith, who was an aggressive gang member. "Although Makdessi went to the floor correctional officer to request that he be placed in a different cell or protective custody, and the officer said he would advise Sgt. King, he

4

remained in the same cell with Smith." J.A. 957. Makdessi also testified that he wrote a complaint about being housed with Smith, which Smith destroyed.

Per prison operating policy, offender enemies are to be identified and separated. Under the policy, prison officials "shall take appropriate measures to protect those offenders involved," and an enemy is defined as an offender who "pose[s] a significant threat to the life of another offender." J.A. 962.

Makdessi testified that he was physically and sexually assaulted by Smith and his Gangster Disciple associates numerous times. On one such occasion, December 8, 2010, Smith beat and raped Makdessi, Makdessi "tried to report this incident to Sgt. King, but King told him to 'get the hell away' from him, and no investigation occurred." J.A. 957. Within a day of the December 8 attack, Makdessi wrote a letter to the Assistant Warden about it but received no response.

Makdessi also reached out to the Federal Bureau of Investigation on December 20, 2010, stating that he feared prison staff and prison gang members had teamed up to end his life. In the letter to the FBI, Makdessi also underscored that despite the multiple attacks and his telling Defendant Tracy Fields and others that he was in danger and needed to be placed in protective custody, he remained unprotected in the cell with Smith.

5

Makdessi testified that on December 20, 2010, he met with Defendant Fields regarding an informal complaint he had filed. During that meeting, Makdessi told Defendant Fields that he feared for his life due to his cellmate Smith, a gang leader, and that he wanted to be placed in protective custody. Makdessi testified that Defendant Fields said he would advise Defendant King.

The following day, December 21, 2010, Smith attacked Makdessi. According to Makdessi, Smith confronted him with the letter Makdessi had sent to the Assistant Warden about the December 8 attack and told him that "[b]efore the day is over, we're going to kill you." J.A. 959. Smith punched and beat Makdessi, called him a "snitch," flushed the letter down the toilet, and then raped Makdessi. Id. Makdessi testified that he screamed loudly, yelled for help, and tried—but failed—to push the emergency button in his room. "Makdessi testified that his screams could have been heard." Id. Makdessi testified that Smith ejaculated onto the bed, cleaned himself up, and ordered Makdessi to clean himself.

The prison was on "restricted movement" that day, meaning that inmates had to eat lunch in their cells. J.A. 959. Nevertheless, inmates were allowed out, four cells at a time, to retrieve lunch trays. Makdessi testified that Smith refused to let him leave the cell when the doors opened. And when they

6

shut, Smith forced Makdessi to perform oral sex, during which Makdessi bit Smith. Smith again beat Makdessi. Makdessi testified that Smith's gang associates came by the cell, and prison guards performed their rounds, but no one intervened.

Makdessi testified that Smith packed his television and other personal items in a laundry bag for a gang associate to retrieve. When the cell door opened, while Smith placed Makdessi's things outside the cell, Makdessi escaped. Smith and a gang associate chased and caught him, and Smith again began punching Makdessi. A warning shot was fired, Smith and his gang associates hit the floor, but Makdessi continued to run away.

Makdessi was taken to medical, where he required stitches to his face and an x-ray of his ribs. Blood was also found in Makdessi's anorectal sample and inside the back of Makdessi's underpants. Despite Makdessi's report that Smith ejaculated into the bed sheets, those were never analyzed. Neither was the blood found under Makdessi's fingernails. After discharge from the hospital, Makdessi spent forty-seven days in the mental health infirmary. Smith refused medical treatment after the December 21 altercation and denied the rape allegation.

Makdessi testified that while he was in the mental health infirmary, Defendant King came by and said "'I told these guys to go ahead and kill you'" and that "'[y]ou need to stop filing all these grievances because what happened to you is nothing

compared to what's going to happen to you.'" J.A. 961. Soon thereafter, Makdessi was transferred to another prison, where he was placed in protective custody.

Defendants contradicted much of Makdessi's story. Defendant King, for example, testified that he "never threatened Makdessi." J.A. 969. Defendant Fields testified that Makdessi did not complain of problems with his cellmate on December 20, 2010, nor did Makdessi "indicate[] that he was in fear for his life from anyone, that he was being sexually assaulted or that he feared being sexually assaulted by anyone." J.A. 970. "Likewise, Sgt. King testified he was never made aware that Makdessi feared for his life or that he feared being sexually assaulted." J.A. 971. Defendant Arvil Gallihar, whose duties included being responsible for the overall operations of all the prison buildings, testified that "Makdessi never informed him that he feared for his life, and he never made any allegations of being raped to him." Id. And Defendants King and Gallihar both denied having seen any grievances Makdessi made involving sexual assault.

A half year later, in June 2011, Makdessi brought this suit against various prison officials, alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment. After Makdessi amended his complaint and some named defendants were dismissed, the case proceeded to trial before a

8

magistrate judge. The magistrate judge issued a report and recommendation finding that "Makdessi clearly suffered serious physical injuries" and that "the evidence admitted at trial undoubtedly shows that Makdessi filed numerous grievances and complaints to various departments, and he wrote letters to the Assistant Warden and the Director of the [Virginia Department of Corrections], alleging that he had been sexually assaulted on multiple occasions while incarcerated . . . . [I]t is clear to the undersigned that the staff . . . should have been more diligent in handling Makdessi's claims of sexual assault." J.A. 964, 974-75.

Nevertheless, the magistrate judge found that "Makdessi cannot show that defendants failed to protect him . . . in violation of the Eighth Amendment" and recommended that the district court enter judgment in Defendants' favor. J.A. 975-76. Makdessi specifically objected to only some of the magistrate judge's determinations. The district court adopted in its entirety the magistrate judge's report and recommendation, and Makdessi appealed.

II.

As an initial matter, the parties dispute what claims are actually before us. Makdessi contends that he has challenged all claims dismissed per the magistrate judge's recommendation

9

and report as adopted by the district court. By contrast, Defendants argue that Makdessi failed to specifically object to the magistrate judge's determination that Defendants David Bellamy, Glen Boyd, and Thomas Hall should be dismissed from the case. Accordingly, per Defendants, Makdessi waived any challenge to Bellamy's, Boyd's, and Hall's dismissal.

"[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). This preservation requirement conserves "judicial resources and makes certain that appellate courts have well-formed records to review[.]" United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Where an appellant has failed to preserve an issue, it is deemed waived. Id.

Here, the face of Makdessi's objections to the magistrate judge's recommendation and report speaks for itself. The objections repeatedly mention Defendants King, Fields, and Gallihar—each of those names appears in Makdessi's objections more than twenty times. By contrast, Bellamy's and Hall's names appear in the entirety of the objections only once each, and Boyd's name appears only twice. In essence, they are absent from the objections.

10

Makdessi tries to attach significance to his general contention that another inmate's claim that the December 21 assault was loud enough that a guard would have heard it warranted "examination."[1]  J.A. 980-81.  But that contention, included in a list of "undisputed facts that were absent from the Report and Recommendation," understandably did not put the district court on notice that Makdessi challenged the recommended dismissal of Defendants Bellamy, Boyd, and Hall.

Accordingly, Makdessi failed to preserve any objection to the dismissal of his claims against Defendants Bellamy, Boyd, and Hall.  And Makdessi does not argue, e.g., for plain error review.  We therefore do not review the waived arguments regarding the claims against Defendants Bellamy, Boyd, and Hall. In re Under Seal, 749 F.3d 276, 292 (4th Cir. 2014) (refusing to undertake plain error review in a civil case where appellant failed to argue that the elements for plain error review had been satisfied).

## III.

Moving on to what is before us, we review "judgments stemming from a bench trial under a mixed standard: factual

---

[1] Makdessi's claims against Bellamy, Boyd, and Hall related specifically to the December 21, 2010 attack and not to earlier events such as Makdessi's prior complaints and grievances.

11

findings are reviewed for clear error, whereas conclusions of law are reviewed de novo." Helton v. AT&T, Inc., 709 F.3d 343, 350 (4th Cir. 2013).

As the district court noted, "Makdessi complains that the magistrate judge's report [which the district court adopted in its entirety] offers only two paragraphs about the applicable legal standard and fails to discuss the nuanced legal theories under which he believes he has proved defendants' subjective knowledge through circumstantial evidence." J.A. 1001. Makdessi contends that "[n]o direct evidence of an official's knowledge of the risk is necessary when a risk is obvious . . . ." Appellant's Br. at 32. Upon careful consideration of the controlling law, we agree.

A.

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Amendment also imposes duties on these officials, who must provide humane conditions of confinement. Id.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." Farmer, 511 U.S. at 832 (citation omitted). Prisons house "persons [with] demonstrated proclivit[ies] for antisocial criminal, and often

12

violent, conduct[,]" and at the same time "strip[s]" inmates "of virtually every means of self-protection . . . ." Id. at 833 (citation omitted). "[T]he government and its officials are not free to let the state of nature take its course[, and] gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective." Id. (citations and alteration omitted).

Prison officials are, therefore, obligated to take reasonable measures to guarantee inmate safety. "In particular, . . . prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Id. (quotation marks omitted).

That being said, not every injury suffered by a prisoner at the hands of another "translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. Rather, liability attaches only when two requirements are met. First, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. (quotation marks and citations omitted). For a claim based on a failure to prevent harm, the plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm." Id. No one disputes the lower court's finding here that "Makdessi clearly suffered

13

serious physical injuries" and thus meets this first prong. J.A. 964.

Second, the prison official must have a "sufficiently culpable state of mind" to be held liable. Farmer, 511 U.S. at 834 (citations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . ." Id. It is this second deliberate indifference prong that is at the heart of Makdessi's appeal.

In Farmer, the Supreme Court explained that "deliberate indifference" entails "more than ordinary lack of due care for the prisoner's interests or safety," and "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." Id. at 835 (citation omitted). "The Court held that deliberate indifference in this context lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." Brice v. Virginia Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995).

"Nevertheless, even under this subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." Brice, 58 F.3d at 105. This is because even a subjective standard may be proven with circumstantial evidence:

14

> Whether a prison official had the requisite knowledge
> of a substantial risk is a question of fact subject to
> demonstration in the usual ways, including inference
> from circumstantial evidence, and a factfinder may
> conclude that a prison official knew of a substantial
> risk from the very fact that a risk was obvious.

Farmer, 511 U.S. at 842 (citations omitted). "In other words, although the obviousness of a particular injury is not conclusive of an official's awareness of the injury, an injury might be so obvious that the factfinder could conclude that the guard did know of it because he could not have failed to know of it." Brice, 58 F.3d at 105 (citations omitted).

A prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." Farmer, 511 U.S. at 842 (quotation marks omitted). Direct evidence of actual knowledge is not required. See id. at 842-43.

Accordingly, prison officials may not simply bury their heads in the sand and thereby skirt liability. "[E]ven a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is

15

shown, for example, that he merely refused to verify 'underlying facts that he strongly suspected to be true,'" or that he "'declined to confirm inferences of risk that he strongly suspected to exist.'" Brice, 58 F.3d at 105 (quoting Farmer, 511 U.S. at 843 n.8). And "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Farmer, 511 U.S. at 843. Nor is it dispositive that the prisoner did not give advance warning of the risk or protest his exposure to the risk. Id. at 848-49.

A prison official remains free to rebut the deliberate indifference charge, even in the face of an obvious risk. "Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844. But absent successful rebuttal, they may be held liable for obvious risks they must have known. Id. at 842.

B.

We find a close reading of Farmer illuminating for how to apply the deliberate indifference standard both generally and

16

specifically to Makdessi's case. In Farmer, the plaintiff was a young transsexual serving a twenty-year sentence for credit card fraud. 511 U.S. at 829. Although a biological male, Farmer had undergone some sex change treatments, including silicone breast implants and unsuccessful testical-removal surgery. Id. Despite a feminine appearance, Farmer was incarcerated in male prisons.

For disciplinary reasons, prison officials transferred Farmer to a higher-security facility, where Farmer was housed in the general population. Id. at 830. Farmer voiced no objection about the transfer or placement. But within two weeks of arrival, Farmer was beaten and raped by a cellmate. Id.

Farmer sued, alleging that the transfer of a transsexual with feminine characteristics to a high-security prison with a history of inmate assaults amounted to deliberate indifference in violation of the Eighth Amendment. Id. at 830-31. The district court ruled in favor of the prison officials, holding that there could be no constitutional violation in the absence of actual knowledge of a potential danger. In so ruling, the district court focused on Farmer's failure to protest the transfer or alert prison officials to any danger. Id. at 831-32. The Seventh Circuit affirmed, but the Supreme Court granted certiorari and unanimously reversed.

17

After laying out Eighth Amendment law and defining deliberate indifference, the Supreme Court explained that the lower courts had placed undue weight on the fact that Farmer had not complained about the transfer to the general population at the higher-security prison. "[T]he failure to give advance notice is not dispositive" if it could be shown that the plaintiff's condition and appearance, coupled with the knowledge of violent assaults in the prison, made it reasonable to believe that the defendants were aware of a serious risk to the plaintiff but took no protective action. Id. at 848-49. The case, therefore, was remanded for reconsideration. Id. at 849.

In this case, Makdessi is a short, middle-aged prisoner with physical and mental problems that make him "vulnerable to harassment and attacks by other inmates." J.A. 956. For years, Makdessi complained to prison officials, including in the form of numerous written letters and grievances, about physical and sexual abuse he suffered in prison. Those complaints often garnered no response, and one response—to a December 2009 complaint expressly mentioning sexual assault—simply stated "Hopefully you will be well soon." J.A. 974.

Despite Makdessi's stature, vulnerability, and repeated complaints, Makdessi was placed in a cell with an aggressive prison gang member, Smith, in August 2010. By the end of October 2010, Makdessi filed a report "stating that he had been

18

sexually assaulted by his cellmate." Id.[2] Yet "the standard protocol of separating inmates alleging sexual assault was not followed when Makdessi filed" the October 2010 report. Id. He was left in the cell with Smith until his physical and mental injuries from the December 21, 2010 attack sent him to the prison infirmary for a month and a half. Makdessi was then transferred to another prison and placed in protective custody.

Despite these facts, the magistrate judge and district court determined that Makdessi had failed to meet the subjective standard for deliberate indifference, i.e., that Makdessi had failed to show that Defendants King, Fields, and Gallihar had actual knowledge of the substantial risk of serious harm Makdessi faced. The report and recommendation so concluding contained a total of two paragraphs setting forth the applicable law.

The paragraph dealing with deliberate indifference correctly recognized that to be liable, a prison official "must actually have perceived" the risk to the prisoner. J.A. 964. But absent from the court's abbreviated discussion of the law, as well as its application thereof to the facts, is the recognition that actual knowledge can be shown by circumstantial

---

[2] Defendants disputed that the report as originally filed stated that Smith had sexually assaulted Makdessi.

evidence that the risk was so obvious that the Defendants had to know it. See, e.g., Farmer, 511 U.S. at 842; Brice, 58 F.3d at 105.

Additionally, in rejecting Makdessi's claims, the court below focused on some factors that, in light of Farmer, may be irrelevant. For example, the court seized on the fact that Makdessi did not "'personally inform[] Capt. Gallihar, Lt. Fields or Sgt. King that he feared for his life or safety.'" J.A. 1003 (quoting J.A. 976). Neither did Farmer—and yet, in reversing the lower courts, which had seized on just that, the Supreme Court made plain that "the failure to give advance notice is not dispositive" if it can be shown that the circumstances made it reasonable to believe that the defendants were aware of a serious risk to the plaintiff but took no protective action. Farmer, 511 U.S. at 848-49.

Similarly, the court below focused on the fact that "only one of the documents filed before [the] December 21 [attack] stated that Makdessi had previously been assaulted by his current roommate." J.A. 1003. Yet Farmer makes clear that "a prison official [cannot] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault."

20

*Farmer*, 511 U.S. at 843. Indeed, under the circumstances described in *Farmer*, "it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom." Id. at 844.

Furthermore, the court below underscored that Makdessi's "written complaints and grievances often sought mental health treatment or a single cell assignment, rather than expressly requesting protection." J.A. 1006. Even assuming that the court's characterization of Makdessi's complaints and grievances is accurate, it seems apparent that both of those requests can be construed as forms of seeking protection. And regardless, *Farmer* makes plain that whether a prisoner protests or complains before he is injured may be irrelevant. 511 U.S. at 848-49.

Finally, the court below focused on the fact that Defendants played no role in "assigning" cellmates, suggesting that Defendants therefore could not be liable for any risk to Makdessi arising from his being housed with Smith. J.A. 1007. That Defendants did not initially assign Smith to Makdessi's cell, however, does not necessarily shield them from liability if they knew that the undisputedly vulnerable Makdessi shared a cell with an undisputedly aggressive gang member, knew—perhaps because it was so obvious that they had to know—that this continued arrangement constituted a substantial risk of serious harm to Makdessi, yet did nothing. *Farmer*, 511 U.S. at 842.

21

C.

In sum, the magistrate judge and then the district court, which adopted the magistrate's recommendation and report in its entirety, failed to appreciate that the subjective "actual knowledge" standard required to find deliberate indifference may be proven by circumstantial evidence that a risk was so obvious that it had to have been known. Further, the court below focused on factors that, under Farmer, may be irrelevant. The dismissal of Makdessi's claims against Defendants Fields, King, and Gallihar, is thus vacated, and the case is remanded for reconsideration using the proper legal framework.

Whether Makdessi succeeds with his claims remains an open question. And even if Makdessi shows that the risk of serious harm he faced was so obvious that Defendants Fields, King, and Gallihar must have known it, Defendants may still be able to successfully rebut the charge. But regardless of the outcome, the proper legal framework must be applied to address Makdessi's claims.

Finally, we echo the district court that "[n]o matter what an inmate's crime, his prison sentence should not include the sort of victimization described in Makdessi's many complaints and grievances. Prison officials, from the security officers to the mental health professionals and grievance coordinators, have

22

an ongoing constitutional obligation to protect inmates from each other."  J.A. 1009.

IV.

For the reasons stated above, the dismissal of Makdessi's claims against Defendants Fields, King, and Gallihar is vacated, and the matter is remanded for reconsideration in light of this opinion.

VACATED AND REMANDED

23

DIANA GRIBBON MOTZ, Circuit Judge, concurring:

I concur in Judge Wynn's opinion for the court. On remand, Adib Eddie Ramez Makdessi may not prevail, but the judgment of the district court rejecting his claim in its entirety cannot stand. I write separately to explain why I believe governing legal principles require this relief.

The Supreme Court has painstakingly explained that an inmate can establish a violation of the Eighth Amendment by offering evidence that a prison official "knew of a substantial risk" that the inmate would suffer "serious harm" or that the official "must have known" about this risk. Farmer v. Brennan, 511 U.S. 825, 842 (1994) (emphasis added). And a court may conclude that the official must have known of that substantial risk based on "the very fact that the risk was obvious." Id. Here, Makdessi undoubtedly suffered serious harm when he was assaulted by his cellmate.[1] The remaining question is whether Defendants Fields, King, and Gallihar ("the Defendants") must have known of the substantial risk that Makdessi would be assaulted by a fellow prisoner.

---

[1] The Defendants offer no argument that Makdessi failed to demonstrate that he suffered "serious harm," and, given the prison's own medical records, such an argument would be frivolous.

24

The district court expressly recognized the "contrasts between Makdessi himself (5 feet 4 inches tall, age 49, physically hindered by back problems and asthma, depressed, security level 3, no gang affiliation, two minor prison infractions)" and the prisoner who beat Makdessi, Michael Smith "(a 'Gangster Disciple,' disciplinary record of almost 30 charges, including masturbating and making sexual advances toward a non-offender, numerous aggravated assaults, and fighting with another inmate)." J.A. 1007.[2] Notwithstanding these significant differences in age, size, health, disciplinary record, and gang affiliation, however, the district court rejected Makdessi's contention that in permitting Makdessi to reside in the same cell as Smith, the Defendants ignored an obvious risk of serious harm to Makdessi.

The district court offered a very limited rationale for so holding. The court simply stated that because the Defendants testified that they did not "assign[] cellmates," it could not "find that the physical and disciplinary differences" between Makdessi and Smith undermined the magistrate judge's determination that the Defendants lacked "prior knowledge that Smith would likely victimize Makdessi." J.A. 1007-08 (emphasis

---

[2] Citations to the J.A. refer to the parties' Joint Appendix filed in this case.

added).[3]  For the following reasons, I cannot conclude that this rationale provides an adequate basis for rejection of Makdessi's obvious risk claim.

First, the district court's explanation evidences a belief that Makdessi had to prove that the Defendants had <u>actual</u> "prior knowledge" of the risk that he would be assaulted.  The law, of course, is quite different.  The Supreme Court has clearly held that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious," as where the official "had been exposed to information concerning the risk and thus must have known about it."  <u>Farmer</u>, 511 U.S. at 842 (internal quotation marks and citation omitted).

Second, the district court also seemed to believe that Makdessi had to prove that the Defendants knew of a substantial risk that <u>Smith</u>, in particular, rather than any other inmate, might assault Makdessi.[4]  But <u>Farmer</u> also forecloses a specific risk requirement of this sort.  <u>See</u> <u>id.</u> at 843 ("Nor may a

---

[3] The magistrate judge herself offered no rationale for recommending rejection of Makdessi's obvious risk claim. Indeed, the magistrate judge failed to address Makdessi's obvious risk claim at all.

[4] Further indicating that the district court held this erroneous view is the significance it attached to the fact that in Makdessi's "dozens" of written "complaints and grievances" only once prior to December 21 did he state that he had "previously been assaulted by his current roommate," Smith. <u>See</u> J.A. 1003.

26

prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.").

Third, the district court apparently reasoned that the Defendants' testimony that they had no role in cell assignment absolved them from liability even if they knew (or should have known) that Makdessi was housed with Smith and that this subjected Makdessi to an obvious risk of serious harm. But the Defendants testified only that they played no role in assigning cellmates. They offered no testimony or other evidence that they did not know that Makdessi and Smith were cellmates. And evidence in the record suggests that the Defendants did indeed know of this.[5] As we explained in reversing the judgment after trial for a prison guard in another Eighth Amendment case, "even a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is shown, for example, that he . . . 'declined

_____

[5] Fields testified that he remembered when Makdessi and Smith were celled together. J.A. 778. Moreover, as the district court noted, Gallihar testified that he, Fields, and King, were "the officers responsible for the safety of inmates in Makdessi's pod," J.A. 1005; this suggests that all three Defendants knew that Makdessi and Smith were celled together -- and would have been aware of the dangerous mismatch.

27

to confirm inferences of risk that he strongly suspected to exist.'" Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 843 n.8).

Finally, the district court appears not to have considered the obvious risk in housing Makdessi with Smith in the context of Makdessi's many grievances documenting prior physical and sexual assault at the prison. The magistrate judge found (and the district court agreed) that "the evidence admitted at trial undoubtedly shows that Makdessi filed numerous grievances and complaints to various departments, and he wrote letters . . . alleging that he had been sexually assaulted on multiple occasions while incarcerated at Wallens Ridge." J.A. 974.[6] The district court properly recognized that knowledge of serious risk of harm could be inferred by demonstrating a "longstanding, pervasive, [and] well-documented" risk, Farmer, 511 U.S. at 842 (internal quotation marks and citation omitted). But the court discounted Makdessi's evidence of exactly such "well-documented" risk for two, equally unpersuasive, reasons.

---

[6] The magistrate judge also found Makdessi's credibility undermined by the attendance records that contradicted his testimony that he spoke with defendant Boyd on a particular date. J.A. 971. Of course, we defer to credibility determinations of a trial court. But this finding does not undermine Makdessi's credibility as to his "numerous grievances and complaints" to prison officials, which the magistrate judge expressly found believable. J.A. 974.

Initially, the court relied on the Defendants' testimony that "[s]ecurity matters or sexual assault allegations might be directly assigned to . . . a higher-ranking officer" and so the Defendants "would not necessarily see [them]." J.A. 1005 (emphasis added). The Defendants, however, offered no evidence that this is in fact what happened in Makdessi's case. Testimony that serious allegations of assault "might be" assigned to other officers does not establish that the Defendants had no knowledge of the risk of substantial harm to Makdessi. This is particularly so given the number of Makdessi's complaints of abuse, the written policy requiring notification of all such abuse, see J.A. 494-501, and the fact that the face of some of the complaints expressly state that they were forwarded directly to one or more of the Defendants. See, e.g., J.A. 246; J.A. 517.

The other reason that the district court offered for discounting Makdessi's multiple written grievances was that they were "general" and "often sought mental health treatment or a single cell assignment, rather than expressly requesting protection." J.A. 1006. But examination of the grievances themselves belies this conclusion. See, e.g., J.A. 256, 259-60, 263, 266, 274, 276, 277. Many are specific; few are limited to expressions of mental illness or single-cell assignment; crucially, nearly all express ongoing fear of physical harm or

29

retaliation. Moreover, those instances in which Makdessi did simply plead to be assigned to a single cell to avoid further sexual assault would seem, contrary to the district court's conclusion, to qualify as "expressly requesting protection."

On remand, the district court will have an opportunity to apply these governing principles. The court will be able to determine, in light of Makdessi's undisputed vulnerability and his multiple written complaints of abuse at the hands of other prisoners, if the risk of serious harm to Makdessi in housing him with an aggressive gang member who had committed numerous assaults while imprisoned was so obvious that the Defendants must have known of the risk, appreciated its seriousness, and yet failed "to take reasonable measures to abate it." Farmer, 511 U.S. at 847.[7]

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones," no matter how abhorrent a prisoner's crimes. Id. at 832 (internal quotation marks and citation omitted). A prisoner faces a daunting task in establishing an Eighth Amendment violation. But when an inmate

---

[7] Of course, "it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety." Farmer, 511 U.S. at 844. But when the risk is obvious, the burden shifts to the prison official to rebut the inference that he must have known about it. Id. Naked assertions of ignorance that defy prison procedure and logic cannot satisfy this burden.

has "take[n] advantage of internal prison procedures for resolving inmate grievances" and these actions "do not bring constitutionally required changes, the inmate's task in court will obviously be much easier." Id. at 847. Most importantly, the Supreme Court has been clear that the Eighth Amendment does not allow prison officials "to take refuge in the zone between ignorance of obvious risks and actual knowledge of risks." Id. at 842 (internal quotation marks and citation omitted). Thus, prison officials may not escape liability simply by offering a blanket denial of any knowledge of an obvious risk. They "are not free to let the state of nature take its course" within their prisons but rather "have a duty to protect prisoners from violence at the hands of other prisoners." Id. at 833 (internal quotation marks and citation omitted).

For these reasons, I join in the order vacating the judgment of the district court and remanding the case for further proceedings.

SHEDD, Circuit Judge, concurring in part and dissenting in part:

I agree that Makdessi waived his appellate challenge to the judgment in favor of defendants Bellamy, Boyd, and Hall. However, I disagree that the judges below improperly analyzed Makdessi's Eighth Amendment claim against defendants Fields, King, and Gallihar. In my view, the majority's consideration of the judgment in favor of the latter three defendants is more akin to a summary judgment review than a bench trial review, and it fails to adequately account for the factual findings made by the magistrate judge and reviewed de novo by the district judge.[1]

I

For purposes of this appeal, it is established that Makdessi was assaulted and injured by his cellmate, Smith, on December 21, 2010. The unfortunate reality is that prisons housing inmates convicted of violent crimes are "inherently dangerous places," United States v. Tokash, 282 F.3d 962, 970 (7th Cir. 2002),[2] where "acts of violence by inmates against inmates are inevitable," Shrader v. White, 761 F.2d 975, 980

---

[1] I disagree with much of my colleague's separate concurring opinion. However, because she has joined the majority opinion, which speaks for the Court, I will limit my comments to that opinion.

[2] Makdessi is certainly an inmate convicted of violent crimes. He is serving two life sentences for the murders of his wife and a third-party. See Makdessi v. Watson, 682 F.Supp.2d 633 (E.D.Va. 2010). Before being prosecuted, he collected $700,000 from his wife's life insurance policies. See J.A. 658.

(4th Cir. 1985), and the elimination of such violence is "virtually impossible," Taylor v. Freeman, 34 F.3d 266, 273 n.6 (4th Cir. 1994). Although the Eighth Amendment imposes a duty on prison officials to protect inmates from violence, Farmer v. Brennan, 511 U.S. 825, 832-33 (1994), "[n]ot every injury suffered by [an inmate] at the hands of another establishes liability against a prison official," Brown v. N.C. Dept. of Corr., 612 F.3d 720, 723 (4th Cir. 2010). Rather, a prison official violates the Eighth Amendment only if he has a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (internal punctuation and citation omitted).

"The burden is on the [inmate] to demonstrate that prison officials violated the Eighth Amendment, and that burden is a heavy one." Pyles v. Fahim, 771 F.3d 403, 408-09 (7th Cir. 2014). Pertinent here, "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer, 511 U.S. at 828. A prison official "demonstrates deliberate indifference if he knows of and disregards an excessive risk to inmate health or safety;" stated otherwise, "the test is whether the [prison official knows] the plaintiff inmate faces a serious danger to his safety and . . . could avert the danger easily yet . . . fail[s] to do so." Brown, 612 F.3d at 723 (internal punctuation and citations omitted).

33

Deliberate indifference "is a very high standard," Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999), which "make[s] it considerably more difficult for [an inmate] to prevail than on a theory of ordinary negligence," Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 73 (2001). It is a subjective standard, Farmer, 511 U.S. at 829, that requires an inmate to prove "that the prison official had actual knowledge of an excessive risk to [his] safety," Danser v. Stansberry, 772 F.3d 340, 347 (4th Cir. 2014). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842. Thus, if a prisoner "presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of

34

fact to find that the defendant-official had actual knowledge of the risk." Id. at 842-43 (internal punctuation and citation omitted).

However, "[t]hat a trier of fact may infer knowledge from the obvious . . . does not mean that it must do so." Id. at 844. Therefore, prison officials may defeat an Eighth Amendment claim by showing, "for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger. . . ." Id. This is true even "if the risk was obvious and a reasonable prison official would have noticed it." Id. at 842. Moreover, although the inmate may prove deliberate indifference by circumstantial evidence, he may not rely on "unsupported speculation." Danser, 772 F.3d at 348 n.10.

II

Makdessi did not invoke his jury trial right; therefore, the district judge referred this case to the magistrate judge "for appropriate proceedings and preparation of proposed findings of fact and conclusions of law and recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B)." J.A. 997. As Makdessi notes, the evidentiary hearing before the magistrate judge was "'the equivalent of a bench trial.'" Opening Brief for Makdessi, at 28 (quoting Hicks v. Norwood, 640 F.3d 839, 842 (8th Cir. 2011)). The majority appears to agree with this

35

characterization. See Majority Op., at 12 (noting standard of review from a bench trial judgment).

In this posture, we must accept the trial judge's factual findings unless they are clearly erroneous, but we review the judge's legal determinations de novo. F.T.C. v. Ross, 743 F.3d 886, 894 (4th Cir.), cert. denied, 135 S.Ct. 92 (2014). The majority primarily bases its decision to vacate the judgment on its conclusion that the judges below "failed to appreciate that the subjective 'actual knowledge' standard required to find deliberate indifference may be proven by circumstantial evidence that a risk was so obvious that it had to have been known." Majority Op., at 22. The record belies this conclusion.

A.

Prior to the bench trial, the district judge denied these defendants' summary judgment motion. At the summary judgment stage, the district judge was required to view the facts in the light most favorable to Makdessi, the nonmoving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). In essence, the district judge was required to accept as true Makdessi's version of events.[3] The district judge expressly noted that deliberate

---

[3] The majority recounts Makdessi's testimony in detail, see Majority Op., at 4-8, but devotes only one paragraph to the defendants' version of events, see id. at 8. Notably, much of Makdessi's self-serving testimony was not credited by the judges below and does not constitute the "facts" of the case. For (Continued)

36

indifference may be proven by circumstantial evidence, J.A. 226, and he concluded that "Makdessi's allegations and evidence are sufficient to present disputed issues of material fact as to whether each of these defendants must have known facts before December 21, 2010, on which they must have perceived that housing Makdessi in the same cell with Smith created a substantial and imminent risk that Smith would cause Makdessi serious harm," J.A. 229. The summary judgment ruling faithfully applied the Farmer deliberate indifference standard.

This case thereafter proceeded to the bench trial before the magistrate judge, and Makdessi bore the burden of proving his Eighth Amendment claim. The magistrate judge made specific and detailed factual findings based on the evidence presented. The magistrate judge recognized that Makdessi argued that Fields, King, and Gallihar failed to protect him from the

_____

example, the majority notes that Makdessi testified that on the day before Smith assaulted him, he told defendant Fields "that he feared for his life due to his cellmate Smith, a gang leader, and that he wanted to be placed in protective custody." Majority Op., at 6. However, the magistrate judge specifically rejected this testimony, finding it to be "incredible." J.A. 972. The majority also states that Makdessi testified that Smith raped him on December 21, 2010. See Majority Op., at 6. However, one witness (Dr. Thompson) testified that Makdessi expressly denied that Smith raped him. See J.A. 731-32, 738-39. Ultimately, the magistrate judge made no finding that Makdessi was raped.

37

December 21, 2010, assault "based on information they had received either verbally directly from Makdessi or through grievances Makdessi had filed prior to that time, from which they learned Smith posed a substantial risk to his safety." J.A. 969. Addressing these arguments, the magistrate judge found that (1) Makdessi did not personally inform Fields, King, or Gallihar before December 21, 2010, that he feared for his safety, J.A. 972, 976; and (2) Makdessi failed to prove that these defendants knew of his prior grievances before December 21, 2010, J.A. 973-74, 976. In light of these findings, the magistrate judge recommended that judgment be entered in these defendants' favor.

Makdessi objected to the magistrate judge's report and recommendation, and the district judge extensively reviewed de novo Makdessi's objections. In doing so, the district judge properly recognized the controlling legal standard, see J.A. 1000 (noting that deliberate indifference may be shown by circumstantial evidence), and he thoroughly detailed his bases for overruling Makdessi's objections.

The district judge first explained that Makdessi failed to object to the magistrate judge's specific factual finding that he did not personally inform Fields, King, or Gallihar before December 21, 2010, that he feared for his safety. J.A. 1003. The district judge then examined Makdessi's objections regarding the magistrate judge's consideration of "other evidence that Smith

38

posed a risk to Makdessi." J.A. 1003. Pointing directly to the magistrate judge's factual findings and other evidence in the record, the district judge specifically considered and rejected Makdessi's arguments that (1) he proved deliberate indifference by showing that the risk of harm was longstanding and well-documented, and the circumstances suggest that the defendants had been exposed to information concerning the risk, J.A. 1004; (2) judgment in Makdessi's favor is proper because the defendants' response was so patently inadequate that they must have known of the risk, J.A. 1006; (3) the risk to Makdessi was so obvious that the defendants knew of it because they could not have failed to know of it, J.A. 1007; and (4) because the defendants knew Makdessi had been labeled as a snitch, they must have known how that the label exposed him to retaliation or risk of assault, J.A. 1008. Accordingly, the district judge overruled Makdessi's objections, adopted the report and recommendation, and entered judgment against Makdessi.

B.

As noted, the majority concludes that the judges below failed to appreciate that Makdessi could prove his case by circumstantial evidence. Explaining its decision, the majority identifies several "facts" that it believes are sufficient for a factfinder to find that the risk of harm Smith posed to Makdessi was so obvious that defendants Fields, King, and Gallihar must

39

have known of it. See Majority Op., at 18-19. Specifically, the majority states:

(1) "Makdessi is a short, middle-aged prisoner with physical and mental problems that make him 'vulnerable to harassment and attacks by other inmates;'"[4]

(2) "For years, Makdessi complained to prison officials, including in the form of numerous written letters and grievances, about physical and sexual abuse he suffered in prison;"

(3) "Those complaints often garnered no response, and one response – to a December 2009 complaint expressly mentioning sexual assault – simply stated 'Hopefully you will be well soon;'"

(4) "Despite Makdessi's stature, vulnerability, and repeated complaints, Makdessi was placed in a cell with an aggressive prison gang member, Smith, in August 2010;"

(5) "By the end of October 2010, Makdessi filed a report 'stating that he had been sexually assaulted by his cellmate;'"

(6) "Yet 'the standard protocol of separating inmates alleging sexual assault was not followed when Makdessi filed' the October 2010 report;" and

(7) Makdessi "was left in the cell with Smith until his physical and mental injuries from the December 21, 2010 attack sent him to the prison infirmary for a month and a half."

The majority then acknowledges that even if Makdessi shows on remand "that the risk of serious harm he faced was so obvious

---

[4] The magistrate judge actually stated that Makdessi "described himself as a 5'4", 49-year-old man with both physical and mental ailments rendering him vulnerable to harassment and attacks by other inmates." J.A. 956 (emphasis added).

that [the defendants] must have known it, [the defendants] may still be able to successfully rebut the charge." Majority Op., at 22.

If this was an appeal from the grant of summary judgment (like Farmer), then I might agree with the majority's analysis that further consideration is merited. However, the record makes it clear that this inquiry has already occurred: the judges below considered this evidence and made appropriate factual findings by which these defendants completely rebutted Makdessi's claim.

"To establish that a risk is 'obvious' in this legal context, a plaintiff generally is required to show that the defendant 'had been exposed to information concerning the risk and thus must have known about it.'" Danser, 772 F.3d at 348 (quoting Farmer, 511 U.S. at 842). Most of the facts identified by the majority involve the grievances and complaints Makdessi filed before December 21, 2010. As the district judge implicitly recognized in denying summary judgment, the number of Makdessi's prior grievances might well be sufficient to permit a factfinder to conclude that the defendants knew of a substantial risk to him. However, based on the trial evidence presented (both direct and circumstantial), the magistrate judge and the district judge found that the defendants did not have actual knowledge of the grievances. This finding is not clearly erroneous, and the

41

majority does not contend otherwise. Therefore, further consideration of the prior grievances is irrelevant to Makdessi's claim against these defendants. See Danser, 772 F.3d at 348-49 (rejecting Eighth Amendment claim because there was no evidence that prison official was exposed to information concerning risk to the inmate).[5]

Removing the prior grievances from the analysis leaves only the following facts identified by the majority: Makdessi's self-description of his physical and mental problems and his assertion that he was vulnerable to harassment and attacks by other inmates; Makdessi's placement in a cell with a known prison gang member, Smith, in August 2010; and Smith's December 21, 2010, assault on Makdessi. Of course, it should be self-evident that the fact that Smith assaulted Makdessi on December 21, 2010, does nothing to suggest that any defendant knew (or should have known) before that day that Smith posed a risk of serious harm to Makdessi.

The majority is thus left with the fact that the "vulnerable" Makdessi was housed in a cell with the "aggressive prison gang member" Smith before the assault occurred. This

---

[5] The majority does not point to any evidence tending to establish that these defendants deliberately blinded themselves to Makdessi's grievances. Moreover, as I have noted, Makdessi cannot rely on unsupported speculation to establish deliberate indifference. Danser, 772 F.3d at 348 n.10.

42

fact, without more, does not suggest that the defendants were deliberately indifferent to Makdessi's safety. See, e.g., Shields v. Dart, 664 F.3d 178, 181 (7th Cir. 2011) (explaining that "a general risk of violence in a maximum security unit does not by itself establish knowledge of a substantial risk of harm" for purposes of the Eighth Amendment); Ruefly v. Landon, 825 F.2d 792, 794 (4th Cir. 1987) (affirming in a pre-Farmer case the dismissal of an Eighth Amendment complaint because the plaintiff only alleged that the prison officials "generally knew" that the inmate who assaulted him was a violent person). In any event, the district judge explained that "[e]ach of the defendants testified that he had no involvement in assigning cellmates." J.A. 1007. Therefore, the decision to house Makdessi and Smith together has no bearing as to whether these defendants violated the Eighth Amendment. See Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." (internal punctuation omitted)).

C.

In denying the summary judgment motion, the district judge recognized that Makdessi alleged facts and circumstances sufficient to permit a trier of fact to find that defendants Fields, King, and Gallihar were deliberately indifferent.

43

However, at the subsequent bench trial, the magistrate judge – sitting as the factfinder – and the district judge – who reviewed the objections to the report and recommendation – carefully considered the evidence presented, and they concluded that Makdessi failed to meet his high burden of proving deliberate indifference. The decision is amply supported by the evidence presented, the factual findings, and the controlling legal standard, and neither Makdessi nor the majority has presented a sufficient reason to set aside that decision.[6] Accordingly, the judgment in favor of Fields, King, and Gallihar should be affirmed.

### III

Based on the foregoing, I concur in Part II of the majority opinion, but I dissent from the remainder.

---

[6] As a second reason for vacating the judgment, the majority states that "the court below focused on factors that, under Farmer, may be irrelevant." Majority Op., at 22. When the decision below is viewed in its entirety and in its proper context, it is clear that the judges fairly considered, and decided the case on, all of the evidence presented.