Vacated and remanded by published opinion. Judge WYNN wrote the majority opinion, in which Judge MOTZ joined. Judge MOTZ wrote a separate concurring opinion. Judge SHEDD wrote a separate opinion concurring in part and dissenting in part.
WYNN, Circuit Judge:
Plaintiff Adib Eddie Ramez Makdessi lodged numerous complaints about - re *129 peated physical and sexual abuse he suffered while imprisoned in Virginia Department of Corrections facilities. The court below found it “clear” that prison officials “should have been more diligent in handling Makdessi’s claims of sexual assault.” J.A. 975. Nevertheless, the magistrate judge recommended, and the district court adopted, the view that because the prison officials named as defendants in Makdes-si’s suit did not actually know of the substantial risk of harm Makdessi faced, his claims must fail.
The Supreme Court has stated, however, that the subjective “actual knowledge” standard required to find prison officials deliberately indifferent to a substantial risk of serious injury may be proven by circumstantial evidence. Prison officials may not simply bury their heads in the sand and thereby skirt liability. Rather, they may be held accountable when a risk is so obvious that it had to have been known. Because we do not believe that the court below appreciated this nuance, we vacate the dismissal of Makdessi’s claims against Defendants Fields, King, and Gallihar.
I.
Makdessi does not dispute the facts found as a result of the bench trial below. Makdessi is a five-foot-four-inch, forty-nine-year-old man with physical and mental ailments that make him “vulnerable to harassment and attacks” in prison. J.A. 956. Thus, Makdessi has been forced to pay for protection from such abuse.
Makdessi testified that Defendant Christopher King, a prison official at Wallens Ridge State Prison, where Makdessi was incarcerated, repeatedly called him names including “sand nigger” and “bitch.” Id. Makdessi testified that as far back as 2007, he complained to the Assistant Warden about mistreatment by his cellmate, that King accused him of being a “snitch,” and that no one ever investigated and nothing was done.
In 2010, Makdessi sent another complaint to the Assistant Warden, stating that King hated him, refused to listen to him, and retaliated against him when he complained. Makdessi testified that this complaint, too, garnered no response.
In August 2010, Makdessi was moved to a cell with a new cellmate, Michael Smith, who was an aggressive gang member. “Although Makdessi went to the floor correctional officer to request that he be placed in a different cell or protective custody, and the officer said he would advise Sgt. King, he remained in the same cell with Smith.” J.A. 957. Makdessi also testified that he wrote a complaint about being housed with Smith, which Smith destroyed.
Per prison operating policy, offender enemies are to be identified and separated. Under the policy, prison officials “shall take appropriate measures to protect those offenders involved,” and an enemy is defined as an offender who “pose[s] a significant threat to the life of another offender.” J.A. 962.
Makdessi testified that he was physically and sexually assaulted by Smith and his Gangster Disciple associates numerous times. On one such occasion, December 8, 2010, Smith beat and. raped Makdessi, Makdessi “tried to report this incident to Sgt. King, but King told him to ‘get the hell away’ from him, and no investigation occurred.” J.A. 957. Within a day of the December 8 attack, Makdessi wrote a letter to the Assistant Warden about it but received no response.
Makdessi also reached out to the Federal Bureau of Investigation on December 20, 2010, stating that he feared prison staff and prison gang members had teamed up *130 to end his life. In the letter to the FBI, Makdessi also underscored that despite the multiple attacks and his telling Defendant Tracy Fields and others that he was in danger and needed to be placed in protective custody, he remained unprotected in the cell with Smith.
Makdessi testified that on December 20, 2010, he met with Defendant Fields regarding an informal complaint he had filed. During that meeting, Makdessi told Defendant Fields that he feared for his life due to his cellmate Smith, a gang leader, and that he wanted to be placed in protective custody. Makdessi testified that Defendant Fields said he would advise Defendant King.
The following day, December 21, 2010, Smith attacked Makdessi. According to Makdessi, Smith confronted him with the letter Makdessi had sent to the Assistant Warden about the December 8 attack and told him that “[b]efore the day is over, we’re going to kill you.” J.A. 959. Smith punched and beat Makdessi, called him a “snitch,” flushed the letter down the toilet, and then raped Makdessi. Id. Makdessi testified that he screamed loudly, yelled for help, and tried-but failed-to push the emergency button in his room. “Makdessi testified that his screams could have been heard.” Id. Makdessi testified that Smith ejaculated onto the bed, cleaned himself up, and ordered Makdessi to clean himself.
The prison was on “restricted movement” that day, meaning that inmates had to eat lunch in their cells. J.A. 959. Nevertheless, inmates were allowed out, four cells at a time, to retrieve lunch trays. Makdessi testified that Smith refused to let him leave the cell when the doors opened. And when they shut, Smith forced Makdessi to perform oral sex, during which Makdessi bit Smith. Smith again beat Makdessi. Makdessi testified that Smith’s gang associates came by the cell, and prison guards performed then-rounds, but no one intervened.
Makdessi testified that Smith packed his television and other personal items in a laundry bag for a gang associate to retrieve. When the cell door opened, while Smith placed Makdessi’s things outside the cell, Makdessi escaped. Smith and a gang associate chased and caught him, and Smith again began punching Makdessi. A warning shot was fired, Smith and his gang associates hit the floor, but Makdessi continued to run away.
Makdessi was taken to medical, where he required stitches to his face and an x-ray of his ribs. Blood was also found in Makdessi’s anorectal sample and inside the back of Makdessi’s underpants. Despite Makdessi’s report that Smith ejaculated into the bed sheets, those were never analyzed. Neither was the blood found under Makdessi’s fingernails. After discharge from the hospital, Makdessi spent forty-seven days in the mental health infirmary. Smith refused medical treatment after the December 21 altercation and denied the rape allegation.
Makdessi testified that while he was in the mental health infirmary, Defendant King came by and said “ T told these guys to go ahead and kill you’ ” and that “ ‘[y]ou need to stop filing all these grievances because what happened to you is nothing compared to what’s going to happen to you.’ ” J.A. 961. Soon thereafter, Mak-dessi was transferred to another prison, where he was placed in protective custody.
Defendants contradicted much of Mak-dessi’s story. Defendant King, for example, testified that he “never threatened Makdessi.” J.A. 969. Defendant Fields testified that Makdessi did not complain of problems with his cellmate on December 20, 2010, nor did Makdessi “indicate[ ] that he was in fear for his life from anyone, *131 that he was being sexually assaulted or that he feared being sexually assaulted by anyone.” J.A. 970. “Likewise, Sgt. King testified he was never made aware that Makdessi feared for his life or that he feared being sexually assaulted.” J.A. 971. Defendant Arvil Gallihar, whose duties included being responsible for the overall operations of all the prison buildings, testified that “Makdessi never informed him that he feared for his life, and he never made any allegations of being raped to him.” Id. And Defendants King and Galli-har both denied having seen any grievances Makdessi made involving sexual assault.
A half year later, in June 2011, Makdes-si brought this suit against various prison officials, alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment. After Makdessi amended his complaint and some named defendants were dismissed, the case proceeded to trial before a magistrate judge. The magistrate judge issued a report and recommendation finding that “Makdessi clearly suffered serious physical injuries” and that “the evidence admitted at trial undoubtedly shows that Makdessi filed numerous grievances and complaints to various departments, and he wrote letters to the Assistant Warden and the Director of the [Virginia Department of Corrections], alleging that he had been sexually assaulted on multiple occasions while incarcerated.... [I]t is clear to the undersigned that the staff ... should have been more diligent in handling Makdessi’s claims of sexual assault.” J.A. 964, 974-75.
Nevertheless, the magistrate judge found that “Makdessi cannot show that defendants failed to protect him ... in violation of the Eighth Amendment” and recommended that the district court enter judgment in Defendants’ favor. J.A. 975-76. Makdessi specifically objected to only some of the magistrate judge’s determinations. The district court adopted in its entirety the magistrate judge’s report and recommendation, and Makdessi appealed.
II.
As an initial matter, the parties dispute what claims are actually before us. Makdessi contends that he has challenged all claims dismissed per the magistrate judge’s recommendation and report as adopted by the district court. By contrast, Defendants argue that Makdessi failed to specifically object to the magistrate judge’s determination that Defendants David Bellamy, Glen Boyd, and Thomas Hall should be dismissed from the case. Accordingly, per Defendants, Makdessi waived any challenge to Bellamy’s, Boyd’s, and Hall’s dismissal.
“[T]o preserve for appeal an issue in a magistrate judge’s report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.” United States v. Midgette, 478 F.3d 616, 622 (4th Cir.2007). This preservation requirement conserves “judicial resources and makes certain that appellate courts have well-formed records to review[.]” United States v. Benton, 523 F.3d 424, 428 (4th Cir.2008). Where an appellant has failed to preserve an issue, it is deemed waived. Id.
Here, the face of Makdessi’s objections to the magistrate judge’s recommendation and report speaks for itself. The objections repeatedly mention Defendants King, Fields, and Gallihar — each of those names appears in Makdessi’s objections more than twenty times. By contrast, Bellamy’s and Hall’s names appear in the entirety of the objections only once each, and Boyd’s name appears only twice. In essence, they are absent from the objections.
*132 Makdessi tries to attach significance to his general contention that another inmate’s claim that the December 21 assault was loud enough that a guard would have heard it warranted “examination.”[1] J.A. 980-81. But that contention, included in a list of “undisputed facts that were absent from • the Report and Recommendation,” understandably did not put the district court on notice that Makdessi challenged the recommended dismissal of Defendants Bellamy, Boyd, and Hall.
Accordingly, Makdessi failed to preserve any objection to the dismissal of his claims against Defendants Bellamy, Boyd, and Hall. And Makdessi does not argue, e.g., for plain error review. We therefore do not review the waived arguments regarding the claims against Defendants Bellamy, Boyd, and Hall. In re Under Seal, 749 F.3d 276, 292 (4th Cir.2014) (refusing to undertake plain error review in a civil case where appellant failed to argue that the elements for plain error review had been satisfied).
III.
Moving on to what is before us, we review “judgments stemming from a bench trial under a mixed standard: factual findings are reviewed for clear error, whereas conclusions of law are reviewed de novo.” Helton v. AT & T, Inc., 709 F.3d 343, 350 (4th Cir.2013).
As the district court noted, “Makdessi complains that the magistrate judge’s report [which the district court adopted in its entirety] offers only two paragraphs about the applicable legal standard and fails to discuss the nuanced legal theories under which he believes he has proved defendants’ subjective knowledge through circumstantial evidence.” J.A. 1001. Mak-dessi contends that “[n]o direct evidence of an official’s knowledge of the risk is necessary when a risk is obvious ...” Appellant’s Br. at 32. Upon careful consideration of the controlling law, we- agree.
A.
“In its prohibition of ‘cruel and unusual punishments,’ the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners.” Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Amendment also imposes duties on these officials, who must provide humane conditions of confinement. Id.
“The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones....” Farmer, 511 U.S. at 832, 114 S.Ct. 1970 (citation omitted). Prisons house “persons [with] demonstrated proclivities] for antisocial criminal, and often violent, conduet[,]” and at the same time “strip[s]” inmates “of virtually every means of self-protection....” Id. at 833, 114 S.Ct. 1970 (citation omitted). “[T]he government and its officials are not free to let the state of nature take its eourse[, and] gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective.” Id. (citations and alteration omitted).
Prison officials are, therefore, obligated to take reasonable measures to guarantee inmate safety. “In particular, ... prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.” Id. (quotation marks omitted).
*133 That being said, not every injury suffered by a prisoner at the hands of another “translates into constitutional liability for prison officials responsible for the victim’s safety.” Id. at 834, 114 S.Ct. 1970. Rather, liability attaches only when two requirements are met. First, “a prison official’s act or omission must result in the denial of the minimal civilized measure of life’s necessities.” Id. (quotation marks and citations omitted). For a claim based on a failure to prevent harm, the plaintiff must show that he was “incarcerated under conditions posing a substantial risk of serious harm.” Id. No one disputes the lower court’s finding here that “Makdessi clearly suffered serious physical injuries” and thus meets this first prong. J.A. 964.
Second, the prison official must have a “sufficiently culpable state of mind” to be held liable. Farmer, 511 U.S. at 834, 114 S.Ct. 1970 (citations omitted). “In prison-conditions cases that state of mind is one of ‘deliberate indifference’ to inmate health or safety....” Id. It is this second deliberate indifference prong that is at the heart of Makdessi’s appeal.
In Farmer, the Supreme Court explained that “deliberate indifference” entails “more than ordinary lack of due care for the prisoner’s interests or safety,” and “more than mere negligence,” but “less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.” Id. at 835, 114 S.Ct. 1970 (citation omitted). “The Court held that deliberate indifference in this context lies somewhere between negligence and purpose or knowledge: namely, recklessness Of the subjective type used in criminal law.” Brice v. Virginia Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir.1995).
“Nevertheless, even under this subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious.” Brice, 58 F.3d at 105. This is because even a subjective standard may be proven with circumstantial evidence:
Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious.
Farmer, 511 U.S. at 842, 114 S.Ct. 1970 (citations omitted). “In other words, although the obviousness of a particular injury is not conclusive of an official’s awareness of the injury, an injury might be so obvious that the factfinder could conclude that the guard did know of it because he could not have failed to know of it.” Brice, 58 F.3d at 105 (citations omitted).
A prison official’s subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the “substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus ‘must have known’ about it.” Farmer, 511 U.S. at 842, 114 S.Ct. 1970 (quotation marks omitted). Direct evidence of actual knowledge is not required. See id. at 842-43, 114 S.Ct. 1970.
Accordingly, prison officials may not simply bury their heads in the sand and thereby skirt liability. “[E]ven a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is shown, for example, that he merely refused to verify ‘underlying facts that he strongly suspected to be true,’ ” or that he “ ‘declined to confirm inferences of risk that he *134 strongly suspected to exist.’ ” Brice, 58 F.3d at 105 (quoting Farmer, 511 U.S. at 843 n. 8, 114 S.Ct. 1970). And “it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.” Farmer, 511 U.S. at 843, 114 S.Ct. 1970. Nor is it dispositive that the prisoner did not give advance warning of the risk or protest his exposure to the risk. Id. at 848-49,114 S.Ct. 1970.
A prison official remains free to rebut the deliberate indifference charge, even in the face of an obvious risk. “Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.” Id. at 844, 114 S.Ct. 1970. But absent successful rebuttal, they may be held liable for obvious risks they must have known. Id. at 842, 114 S.Ct. 1970.
B.
We find a close reading of Farmer illuminating for how to apply the deliberate indifference standard both generally and specifically to Makdessi’s case. In Farmer, the plaintiff was a young transsexual serving a twenty-year sentence for credit card fraud. 511 U.S. at 829, 114 S.Ct. 1970. Although a biological male, Farmer had undergone some sex change treatments, including silicone breast implants and unsuccessful testical-removal surgery. Id. Despite a feminine appearance, Farmer was incarcerated in male prisons.
For disciplinary reasons, prison officials transferred Farmer to a higher-security facility, where Farmer was housed in the general population. Id. at 830, 114 S.Ct. 1970. Farmer voiced no objection about the transfer or placement. But within two weeks of arrival, Farmer was beaten and raped by a cellmate. Id.
Farmer sued, alleging that the transfer of a transsexual with feminine characteristics to a high-security prison with a history of inmate assaults amounted to deliberate indifference in violation of the Eighth Amendment. Id. at 830-31, 114 S.Ct. 1970. The district court ruled in favor of the prison officials, holding that there' could be no constitutional violation in the absence of actual knowledge of a potential danger. In so ruling, the district court focused on Farmer’s failure to protest the transfer or alert, prison officials to any danger. Id. at 831-32, 114 S.Ct. 1970. The Seventh Circuit affirmed, but the Supreme Court granted certiorari and unanimously reversed.
After laying out Eighth Amendment law and defining deliberate indifference, the Supreme Court explained that the lower courts had placed undue weight on the fact that Farmer had not complained about the transfer to the general population at the higher-security prison. “[T]he failure to give advance notice is not dispositive” if it could’ be shown that the plaintiffs condition and appearance, coupled with the knowledge of violent assaults in the prison, made it reasonable to believe that the defendants were aware of a serious risk to the plaintiff but took no protective action. Id. at 848-49, 114 S.Ct. 1970. The case, therefore, was remanded for reconsideration. Id. at 849,114 S.Ct. 1970.
In this case, Makdessi is a short, middle-aged prisoner with physical and mental problems that make him “vulnerable to harassment and attacks by other inmates.” *135 J.A. 956. For years, Makdessi complained to prison officials, including in the form of numerous written letters and grievances, about physical and sexual abuse he suffered in prison. Those complaints .often garnered no response, and one response-to a December 2009 complaint expressly mentioning sexual assault-simply stated “Hopefully you will be well soon.” J.A. 974.
Despite Makdessi’s stature, vulnerability, and repeated complaints, Makdessi was placed in a cell with an aggressive prison gang member, Smith, in August 2010. By the end of October 2010, Makdessi filed a report “stating that he had been sexually assaulted by his cellmate.” Id[2] Yet “the standard protocol of separating inmates alleging sexual assault was not followed when Makdessi filed” the October 2010 report. Id. He was left in the cell with Smith until his physical and mental injuries from the December 21, 2010 attack sent him to the prison infirmary for a month and a half. Makdessi was then transferred to another prison and placed in protective custody.
Despite these facts, the magistrate judge and district court determined that Makdessi had failed to meet the subjective standard for deliberate indifference, i.e., that Makdessi had failed to show that Defendants King, Fields, and Gallihar had actual knowledge of the substantial risk of serious harm Makdessi faced. The report and recommendation so concluding contained a total of two paragraphs setting forth the applicable law.
The paragraph dealing with deliberate indifference correctly recognized that to be hable, a prison official “must actually have perceived” the risk to the prisoner. J.A. 964. But absent from the court’s abbreviated discussion of the law, as well as its application thereof to the facts, is the recognition that actual knowledge can be shown by circumstantial evidence that the risk was so obvious that the Defendants had to know it. See, e.g., Farmer, 511 U.S. at 842, 114 S.Ct. 1970; Brice, 58 F.3d at 105.
Additionally, in rejecting Makdessi’s claims, the court below focused on some factors that, in light of Farmer, may be irrelevant. For example, the court seized on the fact that Makdessi did not “ ‘personally inform[ ] Capt. Gallihar, Lt. Fields or Sgt. King that he feared for his life or safety.’” J.A. 1003 (quoting J.A. 976). Neither did Farmer-and yet, in reversing the lower courts, which had seized on just that, the Supreme Court made plain that “the failure to give advance notice is not dispositive” if it can be shown that the circumstances made it reasonable to believe that the defendants were aware of a serious risk to the plaintiff but took no protective action. Farmer, 511 U.S. at 848-49,114 S.Ct. 1970.
Similarly, the court below focused on the fact that “only one of the documents filed before [the] December 21 [attack] stated that Makdessi had previously been assaulted by his current roommate.” J.A. 1003. Yet Farmer makes clear that “a prison official [cannot] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.” described in Farmer, “it would obviously be irrelevant to liability that the officials could not guess *136 beforehand precisely who would attack whom.” Id. at 844,114 S.Ct. 1970.
Furthermore, the court below underscored that Makdessi’s “written complaints and grievances often sought mental health treatment or a single cell assignment, rather than expressly requesting protection.” J.A. 1006. Even assuming that the court’s characterization of Makdessi’s complaints and grievances is accurate, it seems apparent that both of those requests can be construed as forms of seeking protection. And regardless, Farmer makes plain that whether a prisoner protests or complains before he is injured may be irrelevant. 511 U.S. at 848-49, 114.S.Ct. 1970.
Finally, the court below focused on the fact that Defendants played no role in “assigning” cellmates, suggesting that Defendants therefore could not be liable for any risk to Makdessi arising from his being housed with Smith. J.A. 1007. That Defendants did not initially assign Smith to Makdessi’s cell, however, does not necessarily shield them from liability if they knew that the undisputedly vulnerable Makdessi shared a cell with an undisputedly aggressive gang member, knew — perhaps because it was so obvious that they had to know — that this continued arrangement constituted a substantial risk of serious harm to Makdessi, yet did nothing. Farmer, 511 U.S. at 842, 114 S.Ct. 1970.
C.
In sum, the magistrate judge and then the district court, which adopted the magistrate’s recommendation and report in its entirety, failed to appreciate that the subjective “actual knowledge” standard required to find deliberate indifference may be proven by circumstantial evidence that a risk was so obvious that it had to have been known. Further, the court below focused on factors that, under Farmer, may be irrelevant. The dismissal of Mak-dessi’s claims against Defendants Fields, King, and Gallihar, is thus vacated, and the case is remanded for reconsideration using the proper legal framework.
Whether Makdessi succeeds with his claims remains an open question. And even if Makdessi shows that the risk of serious harm he faced was so obvious that Defendants Fields, King, and Gallihar must have known it, Defendants may still be able to successfully rebut the charge. But regardless of the outcome, the proper legal framework must be applied to address Makdessi’s claims. {;
•Finally, we echo the district court that “[n]o matter what an inmate’s crime, his prison sentence should not include the sort of victimization described in Makdessi’s many complaints and grievances. Prison officials, from the security officers to the mental health professionals and grievance coordinators, have an ongoing constitutional obligation to protect inmates from each other.” J.A. 1009.
IV.
For the reasons stated above, the dismissal of Makdessi’s claims against Defendants Fields, King, and Gallihar is vacated, and the matter is remanded for reconsideration in light of this opinion.

VACATED AND REMANDED

. Makdessi’s claims against Bellamy, Boyd, and Hall related specifically to the December 21, 2010 attack and not to earlier events such as Makdessi’s prior complaints and grievances.

. Defendants disputed that the report as originally filed stated that Smith had sexually assaulted Makdessi.