**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-6174**

FREDDIE NELSON,

        Plaintiff – Appellant,

     v.

JOSH HENTHORN,

        Defendant – Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Elkins.  John Preston Bailey, District Judge.  (2:15-cv-00020-JPB-RWT)

Submitted:  November 9, 2016                Decided:  January 26, 2017

Before WILKINSON, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

Lonnie C. Simmons, DITRAPANO, BARRETT, DIPIERO, MCGINLEY & SIMMONS, PLLC, Charleston, West Virginia, for Appellant.  David L. Wyant, Bruce M. Clark, BAILEY & WYANT, PLLC, Wheeling, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Plaintiff Freddie Nelson appeals the district court's order dismissing his 42 U.S.C. § 1983 action alleging that West Virginia corrections officer Captain Josh Henthorn acted with deliberate indifference and failed to protect Nelson in violation of the Eighth Amendment. On appeal, Nelson challenges the district court's conclusion that Henthorn's actions were reasonable in light of Henthorn's perception of the risk to Nelson. For the reasons that follow, we affirm.

I.

When the relevant events occurred, Nelson was an inmate incarcerated at St. Mary's Correctional Center in West Virginia.[1] Nelson shared his cell with two other inmates, Joshua Humphrey and Gordon Bays. On Saturday, April 13, 2013, when Humphrey learned that Nelson and Bays were sex offenders, he threatened to beat both individuals to death and demanded that they move out of the cell. Specifically, Humphrey threatened to beat Nelson and Bays while they slept with a "locker box lock" or a "lock in a sock." J.A. 6–7. He also said he would "get them when they go for chow." J.A. 7. After "getting rid" of Bays and Nelson, Humphrey stated that he planned to attack two other "baby rapers." J.A. 7. Nelson and Bays reported Humphrey's threats, and Captain Henthorn investigated.

---

[1] Because we review the district court's order dismissing the case, we recite the facts as alleged in the Complaint.

At around midnight that same day, Henthorn interviewed Nelson, Bays, and Humphrey, confirming that Humphrey threatened to beat Nelson and Bays. Henthorn then moved Humphrey to a different cell. Henthorn also informed Nelson that Humphrey would be transferred to a different prison facility.

The next day--Sunday, April 14, 2013--Nelson encountered Humphrey in the prison yard around 7:30 p.m. Humphrey directed Nelson to an area of the yard that limited the prison guards' view. In this area, a group of approximately 15 inmates, including Bays, were waiting. Humphrey called Nelson a "big mouth" and attacked him. J.A. 8. As a result of the beating, Nelson sustained a serious facial fracture. Nelson needed to have a titanium plate affixed to his skull, and he continues to suffer from seizures and pain.

On March 16, 2015, Nelson filed this § 1983 action, alleging that Henthorn failed to take reasonable steps to fully address Humphrey's threat and that Henthorn's lack of effective action amounted to deliberate indifference for purposes of an Eighth Amendment failure-to-protect claim. The district court granted Henthorn's motion to dismiss, holding that Nelson failed to satisfy the standard for advancing a claim of deliberate indifference because Henthorn took reasonable steps to protect Humphrey in light of the threat posed and because Henthorn was, in any event, entitled to qualified immunity.[2] Nelson timely appealed.

---

[2] In the absence of a federal claim, the district court also dismissed without prejudice Nelson's state claims. On appeal to this court, Nelson does not challenge the dismissal of those claims.

## II.

On appeal, Nelson argues he can sustain his deliberate indifference claim because Henthorn knew that Humphrey intended to kill Nelson but failed to take reasonable steps to protect Nelson. Henthorn counters that the allegations contained in Nelson's Complaint do not amount to an Eighth Amendment violation and therefore do not assert a viable claim under § 1983.

We review de novo a district court's dismissal of an action under Federal Rule of Civil Procedure 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012). To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the reasons that follow, we affirm.

## III.

### A.

Qualified immunity is an affirmative defense to liability under 42 U.S.C. § 1983, shielding government officials from liability for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

4

harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Officials asserting this defense bear the burden of proof. *Danser v. Stansberry*, 772 F.3d 340, 345 (4th Cir. 2014). To prevail on a qualified immunity defense, an official must demonstrate that either (1) the facts, viewed in the light most favorable to the plaintiff, show that the official's actions did not violate a constitutional right, or (2) the right allegedly violated was not clearly established at the time the violation occurred, such that a reasonable person would not have known that his conduct was unconstitutional. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court may consider either of these inquiries first when resolving a motion to dismiss based on qualified immunity. *Pearson*, 555 U.S. at 236.

The Eighth Amendment places a duty on prison officials "to take reasonable measures to guarantee inmate safety." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015). "In particular, . . . prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

A failure-to-protect claim has two elements. First, the prisoner must establish he suffered "a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury.'" *Danser*, 772 F.3d at 346 (quoting *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010)). Second, the plaintiff must show that the prison official had a "sufficiently culpable state of mind," specifically a "deliberate indifference to inmate health or safety." *Id.* at 346–47 (quoting *Farmer*, 511 U.S. at 834). Here, because the facial fracture Nelson sustained constitutes a serious or significant physical

5

injury, Nelson's ability to make out his Eighth Amendment claim hinges on the second element.

A prison official "is deliberately indifferent to a substantial risk of harm to a [prisoner] when that [official] 'knows of and disregards' the risk." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837). A plaintiff can establish a prison official's subjective actual knowledge by direct evidence that the official was actually aware of the substantial risk of injury or through circumstantial evidence that permits the inference that the risk of injury was "so obvious" that the prison official "*did* know of it because he could not have failed to know of it." *Id.* (quoting *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995)). Deliberate indifference "entails 'more than ordinary lack of due care for the prisoner's interests or safety,' and 'more than mere negligence,' but 'less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result.'" *Makdessi*, 789 F.3d at 133 (alteration omitted) (quoting *Farmer*, 511 U.S. at 835).

B.

Here, the thrust of Humphrey's threat against Nelson and Bays centered on Humphrey having to share a cell with them because they were convicted sex offenders. Humphrey "demanded they move out of the cell." J.A. 6. And he threatened to beat Nelson while Nelson was sleeping. Henthorn acted immediately to investigate Humphrey's threats and place Humphrey in a different cell. He therefore took "reasonable measures to abate" Humphrey's threat to beat or kill Nelson and Bays if either remained in the shared cell. *Farmer*, 511 U.S. at 847. Nelson concedes that

6

Henthorn acted "reasonably" in doing so. Appellant's Br. at 12, 23.[3] But Nelson argues that the Eighth Amendment requires Henthorn to have done more. We disagree.

Accepting the allegations in Nelson's Complaint as true, Henthorn could conceivably have discerned a broader threat from Humphrey against Nelson in the common areas of the prison. Nelson alleges that Humphrey threatened to "get" him when he went "for chow," and "get rid of two other 'baby rapers'" with whom Humphrey did not share a cell. J.A. 7. Furthermore, to the extent Henthorn allegedly informed Nelson that Humphrey would be transferred to another prison, one could infer that Henthorn believed that Humphrey presented some degree of risk to Nelson and other sexual offenders even after Humphrey was placed in a different cell.

However, while Henthorn's failure to eliminate completely the danger Humphrey posed to Nelson may or may not support a negligence claim, it does not rise to the level of deliberate indifference. Henthorn reasonably concluded that placing Humphrey in a different cell was sufficient--at least through the following day, a Sunday--to protect Nelson because: (1) there is no suggestion that Humphrey ever attacked another prisoner whom he identified as a sexual offender; (2) Humphrey did not immediately attack Nelson or Bays upon learning that they were sexual offenders; and (3) as explained above, Humphrey's threat centered on having to share a cell with Nelson and Bays. The likelihood of Humphrey acting on his secondary and broader threat to attack all sexual

---

[3] Nelson faults Henthorn for interviewing Humphrey, and thus branding Nelson as a "snitch," Appellant's Br. at 8, but Henthorn had to ascertain the facts as a basis for his action.

offenders in the prison was not "so obvious" as to qualify as a substantial risk. *Makdessi*, 789 F.3d at 133 (quoting *Brice*, 58 F.3d at 105).[4] As such, Henthorn's failure to isolate Humphrey did not amount to deliberate indifference.

On the facts presented, we conclude that Henthorn did not violate Nelson's Eighth Amendment rights and is therefore entitled to qualified immunity.

IV.

For the reasons stated above, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

---

[4] Nelson alleges that inmates at other facilities assaulted him at least three times prior to arriving at St. Mary's Correctional Center, and that Henthorn would have known about those prior assaults based on the records maintained by St. Mary's. But these allegations are not relevant for determining the extent of Humphrey's threat to Nelson.

8