**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-6121**

ADIB EDDIE RAMEZ MAKDESSI,

Plaintiff – Appellant,

v.

LT. FIELDS; SGT. KING; CAPT. GALLIHAR,

Defendants – Appellees,

and

HAROLD W. CLARKE, Director of Virginia Corrections; DAVID BELLAMY; TIMOTHY SUMPTER; GLEN BOYD; BRANDON WOODWARD; THOMAS HALL; CLARENCE SHUPE; JANE DOE; DENNIS SLUSS,

Defendants.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Glen E. Conrad, District Judge.  (7:11-cv-00262-GEC-PMS)

Argued:  October 25, 2017                    Decided:  December 7, 2017

Before MOTZ, SHEDD, and WYNN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Wynn wrote the majority opinion, in which Judge Motz joined.  Judge Shedd wrote an opinion concurring in the result only.

**ARGUED:** Stephen William Kiehl, COVINGTON & BURLING LLP, Washington, D.C., for Appellant. Matthew Robert McGuire, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees. **ON BRIEF:** Daniel Suleiman, COVINGTON & BURLING LLP, Washington, D.C., for Appellant. Mark R. Herring, Attorney General, Stuart A. Raphael, Solicitor General, Trevor S. Cox, Deputy Solicitor General, Richard C. Vorhis, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Plaintiff-Appellant Adib Eddie Ramez Makdessi alleges that several correctional officers at the prison where Makdessi was housed recklessly disregarded an obvious risk to his safety in violation of the Eighth Amendment. The district court previously dismissed Makdessi's claims on grounds that the officers disclaimed actual knowledge of any risk to Makdessi's safety. Concerned that the district court failed to consider whether circumstantial evidence established that the risk to Makdessi was so obvious that the officers had to have known of it, we vacated the district court's decision and remanded the case for application of the correct legal standard. *See Makdessi v. Fields*, 789 F.3d 126, 129 (4th Cir. 2015). On remand, the court adverted to and applied the correct legal standard and again concluded that Makdessi failed to introduce adequate factual support for his claims. Because we find no clear error in the court's judgment, which largely rested on its credibility assessments, we affirm.

I.

A.

Makdessi is serving a life sentence for committing two murders. The events giving rise to the present dispute occurred while Makdessi was housed at Wallens Ridge State Prison. At that time, Makdessi was 5 feet 4 inches tall, weighed 207 pounds, was approximately 46 years old, and suffered from back pain and asthma. Makdessi did not affiliate with any prison gangs. Throughout his term of incarceration at Wallens Ridge,

3

Makdessi "had problems with all of his cellmates and [was] forced to pay for protection in the prison with commissary items." J.A. 1101.

During Makdessi's confinement at Wallens Ridge, he filed numerous grievances, many of which related to alleged assaults by other prisoners. Although prison officials at times responded to Makdessi's grievances, many were lost or received no response. Makdessi also composed several letters to the Federal Bureau of Investigation—to at least one of which he affixed postage so it was "ready to be mailed"—recounting the alleged abuse he received at the hands of his fellow inmates. *Id.* at 1122.

Makdessi's accounts have varied as to the number of prison assaults he suffered, and he has generally been "unable to provide the names of the offenders, dates of the alleged incidents, any other evidence to support the allegations or provide any investigative leads." *See id.* at 416. On one of the few occasions Makdessi provided prison officials with details regarding an alleged assault—which Makdessi maintains was captured "on [a] security camera" that an "investigator . . . h[ad] seen"—the prison official who investigated the claim found no corroborating evidence. *Id.* at 259

On August 13, 2010, prison officials moved Makdessi to a cell with inmate Michael Smith. At that time, Smith was 5 feet 11 inches tall, weighed 194 pounds, and was approximately 34 years old. Incarcerated for "robbery and carjacking," Smith was a known member of the "Gangster Disciples," a gang characterized by prison officials as "one of the smaller [prison] gangs." *Id.* at 1062, 1067. During the three years leading up to the incident at issue, Smith committed nearly 20 prison infractions, and, based on those

infractions, received 115 days in segregation. Prison officials classified Smith at one security level higher than Makdessi.

On the first day of Makdessi and Smith's cohabitation assignment, Makdessi walked out of their cell and told the floor correctional officer that he did not want to be housed with Smith. The floor correctional officer said he would pass that request on to Sergeant Christopher King. Makdessi subsequently filed numerous complaints and requests for a single cell. Makdessi testified that he received no response, and that the complaints and requests "disappeared." *Id.* at 541.

Notwithstanding Makdessi's complaints and requests, prison officials continued to house Makdessi with Smith. Makdessi testified that during that time, Smith and his Gangster Disciples associates physically and sexually assaulted Makdessi on numerous occasions. Makdessi claims he tried to report the assaults to Sergeant King, the Assistant Warden, and the Federal Bureau of Investigation.

Makdessi further testified that on December 20, 2010, during a meeting with Lieutenant Tracy Fields regarding an unrelated informal complaint Makdessi had filed, Makdessi told Lieutenant Fields "that he feared for his life due to his cellmate Smith, a gang leader, and that he wanted to be placed in protective custody." *Makdessi*, 789 F.3d at 130. According to Makdessi, Lieutenant Fields said he would advise Sergeant King of Makdessi's concerns and request. According to Lieutenant Fields, at the meeting Makdessi never mentioned Smith or any danger to his life. As further detailed in this Court's prior opinion, Smith physically assaulted and allegedly raped Makdessi the

following day. *Id.* at 129–31. The assault and alleged rape caused Makdessi serious physical and mental trauma. *Id.*

B.

Seeking redress for the harms he suffered from the assault and alleged rape, Makdessi filed suit against numerous Wallens Ridge officials under 42 U.S.C. § 1983, alleging that the officials failed to take reasonable measures to protect Makdessi's safety, in violation of his rights under the Eighth Amendment. Makdessi's claims against the three correctional officers party to this appeal—Lieutenant Fields, Sergeant King, and Captain Arvil J. Gallihar (collectively, "Defendants")—survived summary judgment. After a two-day evidentiary hearing, a magistrate judge issued a report and recommendation finding that Makdessi failed to introduce sufficient evidence to support his claims. *Makdessi*, 789 F.3d at 131. In particular, the magistrate found that Makdessi established the first element of his Eighth Amendment claim—that he was "'incarcerated under conditions posing a substantial risk of serious harm'"—but failed to produce evidence sufficient to support the second element of the claim—that the defendant officials were "'deliberate[ly] indifferen[t]'" to the serious risk Makdessi faced. *See id.* at 133 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834–35 (1994)). The district court agreed, entering judgment in favor of all defendants.

This Court vacated the district court's decision, expressing concern that the district court had rested its finding that Makdessi failed to show that the Defendants were "deliberately indifferent" exclusively on the basis that Makdessi did not put forward credible *direct* evidence of the officers' actual knowledge of the substantial risk Smith

6

posed to Makdessi. *Id.* at 135–36. We explained that under the Supreme Court's decision in *Farmer*, a prisoner also may demonstrate deliberate indifference through *circumstantial* evidence establishing that "a risk [wa]s so obvious that it had to have been known" by the defendant. *Id.* at 129. We also expressed concern that the district court considered factors irrelevant to the deliberate indifference analysis, such as its finding that Makdessi did not "personally inform" Defendants that he feared for his safety and that Makdessi's grievance filings did not indicate that Smith, in particular, posed a risk to Makdessi. *Id.* at 135–36. We therefore remanded the case "for reconsideration using the proper legal framework." *Id.* at 136.

On remand, the magistrate judge conducted another evidentiary hearing geared toward the sole remaining question: whether the risk to Makdessi posed by assigning him to a cell with Smith was so obvious that Defendants violated the Eighth Amendment by housing the two inmates together. In again finding that Makdessi failed to prove his claim, the magistrate judge found "that Makdessi . . . failed to persuade the court that [Defendants] were deliberately indifferent to a known substantial risk to his safety." J.A. 1176.

This determination in large part rested on the magistrate's "finding that much of Makdessi's testimony is not credible." *Id.* By contrast, the magistrate found Defendants' testimony credible, including their testimony that Makdessi had never complained to them regarding sexual assaults nor expressed any concern for his life. Furthermore, although Makdessi testified regarding numerous grievances, he introduced into evidence only one form alleging a prior sexual assault by Smith. That form was directed to the

7

mental health department, rather than any Defendant. The magistrate found there was no evidence that Defendants saw that complaint or any of the other documents in which Makdessi made sexual assault allegations. Additionally, the magistrate highlighted other facts she found weighed against a finding of obviousness, including that Makdessi weighed more than Smith and that no Defendant knew of the full breadth of Smith's institutional violations. In her obviousness analysis, the magistrate also found significant Captain Gallihar's credible testimony that an inmate's underlying crime could inform cell assignments, and Makdessi's murders were at least as violent as Smith's robbery and carjacking; that the Gangster Disciples was not one of the prison's most violent gangs; and, finally, that only *truthful* claims of prior sexual assaults are relevant to determining if an inmate is vulnerable to future victimization.

Over Makdessi's objection, the district court adopted the magistrate's report and recommendation. In particular, the district court agreed with the magistrate's resolution of the conflicting testimony—i.e., largely discrediting Makdessi's narrative in favor of Defendants' rebuttals—and concluded that even if Defendants did, in fact, "know" of facts giving rise to an inference of an obvious risk to Makdessi's safety, Defendants sufficiently rebutted that inference through evidence establishing that they "believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 1218 (quoting *Farmer*, 511 U.S. at 844). Makdessi timely appealed.

8

II.

Because this case arises from a bench trial, we review factual findings for clear error and conclusions of law de novo. *Plasterers' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 215 (4th Cir. 2011). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Helton v. AT & T, Inc.*, 709 F.3d 343, 350 (4th Cir. 2013) (quoting *Evergreen Int'l, S.A. v. Norfolk Dredging Co.*, 531 F.3d 302, 308 (4th Cir. 2008)). And "[i]n cases in which a district court's factual findings turn on assessments of witness credibility or the weighing of conflicting evidence . . . , such findings are entitled to even greater deference." *Id.* (quoting *Evergreen*, 531 F.3d at 308).

In the present case, Makdessi does not argue that the district court misstated the law, but instead that the evidence below compels judgment in his favor. In this regard, Makdessi principally argues that Defendants knew or must have known of the obvious risk to Makdessi's health and safety as a result of his physical vulnerability, his grievance filings, and Smith's many prison infractions. We address each in turn.

The Eighth Amendment imposes upon "prison officials . . . a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (second alteration in original). As stated above, liability attaches when a plaintiff prisoner establishes: (1) he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) the defendant prison official had a "sufficiently culpable state of mind." *Id.* at 834. In the present case, only the second prong is at issue; the court below

9

found—and we agree—that the evidence of Makdessi's injuries from the assault and alleged rape satisfied the first prong by demonstrating "serious or significant physical . . . injur[ies] resulting from the challenged conditions" of confinement. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

The sole remaining question, therefore, is whether there is sufficient evidence to establish that the defendants had "a 'sufficiently culpable state of mind' to be held liable." *Makdessi*, 789 F.3d at 133 (quoting *Farmer*, 511 U.S. at 834). This required mental state is one of "'deliberate indifference' to inmate health or safety," *Farmer*, 511 U.S. at 834, often characterized as "somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law," *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). An inmate plaintiff may demonstrate deliberate indifference through direct or circumstantial evidence. *Farmer*, 511 U.S. at 842; *Makdessi*, 789 F.3d at 133. Because a plaintiff may prove deliberate indifference through circumstantial evidence, even in the absence of direct evidence that a prison official knew of a risk posed to the plaintiff, "an injury might be so obvious that the factfinder could conclude that the [official] *did* know of it because he could not have failed to know of it." *Makdessi*, 789 F.3d at 133 (quoting *Brice*, 58 F.3d at 105).

Prison officials may rebut such a showing of obviousness. *Id.* at 134; *see also Farmer*, 511 U.S. at 844 ("That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so."). To that end, "[p]rison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore

10

unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844.

Because the magistrate and district court's analysis focused on whether Defendants rebutted any circumstantial evidence establishing the obviousness of the risk to Makdessi's safety, we assume, without deciding, that circumstantial evidence indicated that housing Makdessi with Smith presented an obvious risk. Under this assumption, Defendants may be charged with knowledge of the obvious substantial risk unless they demonstrate that the facts and circumstances "*prove* that they were unaware even of an obvious risk to inmate health or safety" or did not appreciate the risk's severity. *See id.* (emphasis added). Accordingly, we consider only whether the court below correctly concluded that Defendants sufficiently rebutted Makdessi's showing of obvious risk by demonstrating that they either did not subjectively know of the risk or did not appreciate its severity.

Makdessi contends that several associated facts establish that Defendants knew or must have known of the substantial risk inherent in his cell assignment with Smith: (1) Makdessi was smaller than Smith, older than Smith, and had health problems; (2) Makdessi filed numerous grievances and many times checked himself into segregation, both indications of vulnerability; and (3) Smith was a violent inmate. Defendants respond that the district court's ultimate conclusion—that Defendants rebutted any such showing by demonstrating "that none of the[m] . . . knew before Makdessi ran out of his cell on December 21, 2010, that housing him in the same cell

11

with Smith presented a substantial risk"—is based exclusively on well-founded credibility determinations. Appellees' Br. 31. We agree with Defendants.

Although Smith was in better condition than Makdessi—Makdessi suffered from back problems and asthma, and Smith was seven inches taller than him and twelve years younger—the district court did not clearly err in finding that none of the Defendants thought the physical disparity presented a risk. Lieutenant Fields testified that he only vaguely remembered Makdessi, and that although he would generally notice vulnerable inmates, Makdessi did not stand out as one. Likewise, Captain Gallihar testified both that he never noticed "anything out of the ordinary" with Makdessi, and that neither Makdessi's height nor age stood out as compared to the other inmates or "in the context of the whole you have to look at" in making cell assignments. J.A. 1061. The magistrate and district court did not clearly err in crediting this testimony as establishing that Defendants believed that any risk suggested by Makdessi's physical condition "was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844.

Nor did Defendants consider Makdessi's numerous grievance filings and voluntary self-segregation check-ins as indicating that he faced a risk of suffering serious physical injuries. Although Captain Gallihar and Lieutenant Fields received reports of Makdessi's grievance filings and requests for segregation, including his numerous allegations of physical and sexual abuse, Lieutenant Fields testified that he would receive complaints "all the time" and that multiple prisoners would "daily" request the appropriate forms. J.A. 770. And in testimony the magistrate and district court found credible, Captain Gallihar said he was unaware of anything "ha[ving] been proven to be

12

true regarding [Makdessi] being sexually assaulted," *id.* at 1068, and that a correctional officer "would not consider [a complainant] a victim until the investigation bears that out," *id.* at 1073. Furthermore, Captain Gallihar testified that it was "a common practice" for inmates to request segregation because it could be used "to manipulate cell moves." *Id.* at 1081. Again, the magistrate and district court reasonably credited this testimony as establishing that Defendants believed that any risk suggested by Makdessi's grievance filings and requests for segregation "was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844.[1]

Finally, the district court did not clearly err in concluding that Defendants did not believe Smith's prison-infraction history and membership in the Gangster Disciples indicated that Smith posed a serious risk to Makdessi. When Makdessi was assigned to Smith's cell, Smith had received approximately 20 prison infractions and had spent 115 days in segregation. But Captain Gallihar and Sergeant King investigated and resolved only one infraction related to Smith. And, in testimony credited by the magistrate and district court, Sergeant King said that, other than that incident, he was not aware of any

[1] Nor does the "Institutional Classification Authority Hearing" summary produced at the second evidentiary hearing alter this conclusion. The summary—issued a week after Smith assaulted Makdessi—recommended changing Makdessi's security level to protective custody because he "is a known snitch among staff and other inmates;" has "exhibited poor institutional adjustment;" has "been moved to just about every housing unit" at the prison; was placed in a special unit "[d]ue to his vulnerability;" and could no longer "be safely housed . . . in general population" because "his safety is compromised." J.A. 1098–99. There is no indication, however, that this post-assault security analysis— prepared by a non-party to this suit—established that Defendants knew or must have known of a serious risk to Makdessi's safety at the time of the assault.

other infraction committed by Smith. Likewise, Lieutenant Fields testified that he was unaware of *any* of Smith's infractions. And although Captain Gallihar's higher-ranking position necessarily supplied him with knowledge of more of Smith's infractions, Captain Gallihar stated, in testimony credited by the court, that the correctional officers' weekly review of segregated inmates encompassed "several hundred inmates;" that Smith did not "stand[] out" in those reviews; that "[n]early all" of the inmates had at least one infraction; and that he did not consider Smith to be a "particularly violent inmate." J.A. 1063–65. Furthermore, Captain Gallihar testified that the Gangster Disciples was "one of the smaller gangs" and "by far not the . . . most aggressive bunch." *Id.* at 1062–63. In light of this evidence, we cannot conclude that the magistrate and district court clearly erred in finding that Defendants did not believe that Smith's infraction history posed a substantial risk to Makdessi's safety.

To be sure, the evidence above often conflicts and paints a troubling picture, prompting both the district and magistrate judge to note that "it is clear" that Defendants "should have been more diligent in handling Makdessi's claims of sexual assault." *Id.* at 975, 1009. But, deferring to the district court's credibility findings, the evidence at worst establishes that Defendants here "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844. This is insufficient to establish liability.[2]

---

[2] Makdessi also argues that the district court incorrectly resolved certain factual disputes or otherwise misstated relevant facts and improperly relied on considerations not relevant to the *Farmer* analysis. Makdessi's factual objections, however, principally turn (Continued)

## IV.

In sum, Makdessi's arguments and evidence on appeal fail to surmount the high bar of clear error review. Accordingly, we affirm the dismissal of Makdessi's claims against Defendants.

*AFFIRMED*

---

on the district court's findings that Makdessi's testimony was largely not credible and that Defendants' testimony was credible. Given that on several occasions Makdessi changed or recanted his narratives and allegations and that we afford a factfinder's credibility determinations substantial deference, the court did not clearly err in resolving credibility disputes in Defendants' favor. Likewise, after careful review of the record we conclude that district court's judgment did not rest on any considerations not relevant to the *Farmer* analysis.

SHEDD, Circuit Judge, concurring in result only:

In my view, the magistrate judge and the district judge properly analyzed this case during the original bench trial. *See Makdessi v. Fields*, 789 F.3d 126, 139-45 (4th Cir. 2015) (Shedd, J., concurring in part and dissenting in part). On remand, the magistrate judge and the district judge once again properly analyzed this case. Because the findings of fact are not clearly erroneous, and the judges committed no discernible legal error, I concur in the majority's decision to affirm the judgment.